260 Kan. 851 (1996)
925 P.2d 415
In the Matter of J.C., A Juvenile under the Age of 18 Years, DOB: 06/06/77.
No. 74,765.
Supreme Court of Kansas.
Opinion filed October 25, 1996.
Michael E. Riling, of Riling, Burkhead, Fairchild & Nitcher, Chartered, of Lawrence, argued the cause and was on the brief for appellant.
John F. Wilcox, Jr., assistant district attorney, argued the cause, and Gerard E. Little, assistant district attorney, Mark A. Knight, district attorney, and Carla J. Stovall, attorney general, were on the brief for appellee.
The opinion of the court was delivered by
LOCKETT, J.:
J.C., a juvenile, was charged with a felony. Due to the juvenile's prior adjudication, he was prosecuted as an adult pursuant to K.S.A. 1994 Supp. 38-1602. J.C. appeals the denial of his motion to set aside the prior adjudication, claiming K.S.A. 38-1633(b)(1) required the judge to advise him that (1) the charge to which he stipulated was classified as a felony for adult sentencing purposes and (2) stipulation to a felony charge would affect his status as a juvenile offender should he be charged with future felonies.
A juvenile is a person 10 or more years of age but less than 18 years of age. A juvenile offender is generally defined as a person who does an act while a juvenile which if done by an adult would *852 constitute the commission of a felony or misdemeanor. K.S.A. 38-1602.
When J.C. pled to the first felony, aggravated assault of a law enforcement officer, as a juvenile in 1993, K.S.A. 38-1602(b)(3) provided that the term "juvenile offender" did not include a person 16 years or older who had two prior juvenile felony adjudications. One and one-half years later, J.C. was charged with aggravated arson, a felony. Due to J.C.'s plea and adjudication in 1993, he was prosecuted as an adult pursuant to K.S.A. 1994 Supp. 38-1602. At the time J.C. was charged with the second felony, the statute had been amended to provide that only one prior felony adjudication would result in loss of juvenile offender status for a juvenile 16 years of age or older. K.S.A. 1994 Supp. 38-1602(b)(3).
In an effort to keep from being prosecuted as an adult and to remain under the Juvenile Offenders Code, J.C. filed a motion to set aside the prior 1993 adjudication. J.C. asserted that the prior 1993 adjudication must be set aside because the judge who accepted his stipulation and the plea advisory statement he had signed failed to advise him that (1) he was stipulating to a charge which would be classified as a felony if he were an adult and (2) his stipulation to a felony adjudication would affect his classification as a juvenile offender for subsequent offenses.
At the hearing to set aside the 1993 adjudication, J.C. testified that, at the time of the stipulation, he had not been informed of the difference between a felony and a misdemeanor or of the effect a stipulation to a felony would have on his status as a juvenile offender for a subsequent felony charge. The judge reviewed the record and concluded that J.C. had been adequately informed of the nature and consequences of the charges against him as required by K.S.A. 38-1633(b). The judge determined that the statute in effect at the time did not require that a juvenile be informed of the possible future consequences of stipulation to a felony charge and denied the motion. J.C. appealed.

1993 Adjudication Record
On May 10, 1993, J.C. was charged with four counts of aggravated assault of a law enforcement officer. In the complaint, the *853 charges were stated to be violations of K.S.A. 21-3411, class C felonies. The law required that if a juvenile is being detained, a detention hearing must be held within 24 hours after the juvenile is taken into custody. K.S.A. 38-1632(a)(2). At his detention hearing, J.C. waived reading of the complaint and stipulated to the factual basis for detention. A juvenile caseworker then testified that she was aware that J.C. had been charged with class C felonies. J.C. was held for further proceedings.
At a subsequent plea hearing, J.C. stipulated to one felony charge in exchange for the State's dismissal of the other three felony charges. J.C. signed a plea advisory form. The plea advisory form J.C. signed indicated that J.C. understood that he was charged with aggravated assault of a law enforcement officer, in violation of K.S.A. 21-3411. The form stated the requirements of K.S.A. 38-1633 and set forth the constitutional rights J.C. was waiving by his stipulation and the immediate potential consequences of his stipulation and adjudication, i.e., possible probation, house arrest, placement in a community corrections facility, or outside placement.
After consultation with his attorney, J.C. signed the form and initialed the section of the plea advisory listing the charge and also indicated that he understood the nature of the charge. J.C. informed the judge that he had reviewed the plea agreement with his attorney and understood it. The judge then reviewed the elements of the charge and asked whether J.C. wanted to admit to the elements of the charge. J.C. stated that he did.
The judge requested J.C. to describe in detail the events that gave rise to the charge. J.C. testified he had threatened a police officer with a knife with an 8-inch blade. J.C. admitted it was reasonable for the officer to fear he might be hurt. At the conclusion of the hearing, the judge found that J.C.'s admission was knowledgeable and voluntary and that there was a factual basis for the stipulation. The judge then found that J.C. was a juvenile offender, "having committed an act that would be a class C felony, aggravated assault on a law enforcement officer."
The judge filed a journal entry of adjudication. The journal entry indicated that J.C. had stipulated to Count II of the complaint, *854 aggravated assault of a law enforcement officer, an offense that would be a class C felony if he were an adult; that the stipulation was knowledgeable and voluntary; and that "the Respondent [was] a juvenile offender, having committed an act that would be a Class C felony, if Respondent were an adult."
Neither the judge nor the journal entry informed J.C. of the effect that J.C.'s plea would have upon his status as a juvenile offender under K.S.A. 38-1602 if he were charged with a subsequent felony while under 18 years of age.

DUTY TO INFORM
In 1993, K.S.A. 38-1633 of the Juvenile Offenders Code provided in part:
"(b) When the respondent appears with an attorney in response to a complaint, the court shall require the respondent to admit or deny the allegations stated in the complaint or plead nolo contendere, unless there is an application for and approval of a diversion program. Prior to making this requirement, the court shall inform the respondent of the following:
(1) the nature of the charges in the complaint;
(2) the right of the respondent to be presumed innocent of each charge;
(3) the right to trial without unnecessary delay and to confront and cross-examine witnesses appearing in support of the allegations of the complaint;
(4) the right to subpoena witnesses;
(5) the right of the respondent to testify or to decline to testify; and
(6) the dispositional alternatives the court may select as the result of an adjudication."
J.C. asserts that this court should interpret the phrase "nature of the charges" in K.S.A. 38-1633(b) to require "an explanation of whether an offense would be misdemeanor or a felony for adult sentencing purposes." J.C. argues that the judge's failure to explain that the charge to which he stipulated would be a felony if he were an adult requires that the prior 1993 adjudication be set aside.
J.C.'s argument, raised 1½ years later and only after he had been charged with another felony, is unpersuasive. The record supports the State's position that J.C. was fully informed of the nature of the charge and the possible dispositions for a juvenile and that the charge would have been a felony for an adult. There is no merit to this claim.

*855 Consequences of a Plea
J.C. next contends that K.S.A. 38-1633(b) required the judge to inform him that his plea to the aggravated assault charge could affect his status as a juvenile offender should he be charged with subsequent felonies while a juvenile. Since this issue involves a question of statutory interpretation, our scope of review is unlimited. State v. Donlay, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).
The issue we actually address is whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution required the judge to inform J.C. that by pleading to a felony offense, he could lose his status as a juvenile offender should he be charged with subsequent felonies while a juvenile. This is an issue of first impression. However, this court has dealt with a similar question with respect to K.S.A. 22-3210, which is the counterpart of K.S.A. 38-1633(b) in the adult criminal code.
K.S.A. 22-3210 also establishes requirements which must be met before the court may accept a guilty plea to a felony charge from an adult offender. One of those requirements is that the trial court inform the defendant of the "consequences of the plea ... and of the maximum penalty." K.S.A. 22-3210(a)(2).
In Trotter v. State, 218 Kan. 266, 268, 543 P.2d 1023 (1975), this court noted that K.S.A. 22-3210 was drafted to embody the requirements of due process as they relate to the acceptance of guilty pleas and as established by the United States Supreme Court in Boykin v. Alabama. 395 U.S. 238, 243, 23 L. Ed.2d 274, 89 S. Ct. 1709 (1969).
The Supreme Court held in Boykin:
"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. [Citation omitted.] Second, is the right to trial by jury. [Citation omitted.] Third, is the right to confront one's accusers. [Citation omitted.] We cannot presume a waiver of these important federal rights from a silent record." 395 U.S. at 243.
With respect to the due process requirements relating to guilty pleas, this court stated as to 22-3210 in State v. Dillon, 242 Kan. 410, 413, 748 P.2d 856 (1988):

*856 "This procedure basically follows Rule 11 of the Federal Rules of Criminal Procedure, compliance with which is held to be mandatory upon the federal courts in McCarthy v. United States, 394 U.S. 459, 22 L. Ed.2d 418, 89 S. Ct 1166 (1969), and which procedure is fastened upon the state courts as a requirement of due process. Boykin v. Alabama, 395 U.S. 238, 23 L. Ed.2d 274, 89 S. Ct. 1709 (1969); White v. State, 222 Kan. 709, 713, 568 P.2d 112 (1977). K.S.A. 22-3210 was enacted following the Boykin decision. See Widener v. State, 210 Kan. 234, 237-38, 499 P.2d 1123 (1972)."
Similarly, K.S.A. 38-1633(b) of the Kansas Juvenile Offenders Code was drafted to conform with Boykin's due process requirements. As previously noted, K.S.A. 22-3210(a)(2) of the Kansas Code of Criminal Procedure requires that the court inform the defendant of the "consequences of the plea ... and of the maximum penalty." K.S.A. 38-1633(b)(1) and (6) are the equivalent sections in the Juvenile Offenders Code and require the court to inform a juvenile offender of the "nature of the charges in the complaint" and the "dispositional alternatives the court may select as the result of an adjudication."
The State argues that the court is not required to inform a juvenile offender of the effect of a stipulation to a felony offense upon his or her future status as a juvenile offender because this information is a collateral and remote consequence of the stipulation. As authority for its argument, the State relies on Cox v. State, 16 Kan. App.2d 128, 130, 819 P.2d 1241 (1991), rev. denied 250 Kan. 804 (1992), which determined that a judge is required to inform a defendant of the direct penal consequences of a guilty plea before accepting the guilty plea. However, the judge is not required to inform a defendant of the collateral consequences of a guilty plea.
The State's point is well taken. In Cox, the defendant filed a motion pursuant to K.S.A. 60-1507 alleging that the trial court should not have accepted his guilty plea because he was not advised of the full consequences of his plea. Specifically, Cox argued that the judge had failed to advise him of his loss of voting rights, jury eligibility, or the right to hold office and the future possibility that should he receive parole, restrictions would be imposed upon him.
The Cox court held that a judge is not required to inform a defendant of every possible collateral consequence of his plea, but *857 only direct consequences. 16 Kan. App.2d at 130-31. The Cox court relied upon the Ninth Circuit decision in United States v. King, 618 F.2d 550 (9th Cir. 1980), which held that a sentencing judge is only required to inform the defendant of direct immediate consequences of his plea and not possible collateral consequences. The Ninth Circuit court reviewed other consequences held by courts to be collateral and not direct consequences of a guilty plea, including the possibility of revocation of parole, Sanchez v. United States, 572 F.2d 210 (9th Cir. 1977); the possibility that a federal sentence might be ordered to run consecutive to a state sentence, Faulisi v. Daggett, 527 F.2d 305 (7th Cir. 1976); potential deportation, Fruchtman v. Kenton, 531 F.2d 946 (9th Cir.), cert. denied 429 U.S. 895 (1976); and the likelihood of an undesirable military discharge, Redwine v. Zuckert, 317 F.2d 336 (D. C. Cir. 1963). The Cox court then concluded that a trial court was not required to inform a defendant of collateral consequences which are not included in the mandates of K.S.A. 22-3210. 16 Kan. App.2d at 130-31; see also Hicks v. State, 220 Kan. 279, 552 P.2d 889 (1976) (court accepting guilty plea not required to advise defendant as to future parole eligibility); Ruebke v. State, 11 Kan. App.2d 353, 720 P.2d 1141, rev. denied 240 Kan. 805 (1986) (no abuse of discretion in court's failure to advise defendant of future availability of expungement).
City of Ottawa v. Lester, 16 Kan. App.2d 244, 822 P.2d 72 (1991), is also relevant. In Lester, the defendant sought to withdraw his guilty plea in municipal court to driving under the influence. Lester contended that his plea was involuntary since the municipal judge had not informed him that his driving privileges could be suspended. Lester cited numerous federal and state decisions holding that the sentencing judge is not required to inform a defendant of the collateral consequences of a guilty plea. 16 Kan. App.2d at 246-47, and cases cited therein.
Then, quoting from United States v. Lott, 630 F. Supp. 611, 612 (E.D. Va.), aff'd 795 F.2d 82 (1986), the Lester court stated that the test of whether consequences are collateral has been defined as "whether the consequences imposed are a definite, immediate, and largely automatic result of the guilty plea." 16 Kan. App.2d at *858 248. Applying this test, the court held that suspension of Lester's driving privileges was a collateral consequence of his guilty plea and that the judge was not required to advise Lester of these consequences.
Due process does not require a judge to inform a juvenile that a stipulation to a felony offense may be used subsequently to determine his or her later status as a juvenile offender. Stated another way, one of the collateral consequences of which a defendant need not be informed at a plea hearing is the possibility that the plea may be used to enhance the sentence for a later crime. Such a consequence is not definite, immediate, or automatic but rather only speculative. As the district judge stated in her memorandum opinion:
"The court need not speculate as to whether or not respondent will face future felonies before he is eighteen, nor need the court speculate that the legislature may amend the statute changing the definition of a juvenile offender prior to a respondent's eighteenth birthday. Even if the court had informed Respondent of the definition of juvenile offender at K.S.A. 38-1602(b)(3) in 1993, that definition changed in 1994, so the collateral consequences of his plea changed by legislative action in 1994."
Affirmed.