No. 92,248

STATE OF KANSAS, *Appellee,* v. GWENDLYN K. MOODY, *Appellant.*

144 P.3d 612

Opinion
filed October 27, 2006.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney,* assistant district attorney, argued the cause, and *Kristi L. Barton,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Gwendlyn Moody was charged in the complaint with driving under the influence (DUI) after having been previously convicted of DUI two or more times. Moody pled guilty. Just prior to the imposition of sentence, a third prior DUI conviction was added to Moody's criminal history. Moody acknowledged that she had three prior DUI convictions. Accordingly, the district judge then sentenced Moody as a fourth-time DUI offender. Moody appealed her sentence as a fourth-time DUI offender to the Kansas Court of Appeals. Rejecting a prior Court of Appeals panel's jurisdictional analysis of the sentencing question, this Court of Appeals panel applied a due process analysis, found that due process had been afforded, and affirmed. *State v. Moody,* 34 Kan. App. 2d 526, 120 P.3d 1156 (2005). In addition to the jurisdiction issue, Moody also challenges the validity of the trial court's order requiring her to reimburse the Board of Indigents' Defense Services (BIDS) for attorney and administrative fees without first considering her financial resources, the nature of the burden imposed, and the Court of Appeals' affirmance. This court granted Moody's petition for review.

The issues before this court are (1) did the trial court have jurisdiction to sentence Moody as a fourth-time DUI offender and, if so, was Moody afforded due process, and (2) did the trial court err in ordering Moody to reimburse BIDS fees without first considering her ability to pay as required by K.S.A. 2005 Supp. 22-4513?

The facts are not in dispute and are well stated by the Court of Appeals:

"On July 29, 2002, the State filed a two-count complaint against Moody. Count 1 charged Moody with felony DUI, while count 2 charged her with failure to provide proof of liability insurance. In support of the DUI charge, count 1 alleged:

'Moody did operate or attempt to operate a motor vehicle, to-wit: 1988 Pontiac at Kellogg and Main, Wichita, Sedgwick County, Kansas, while under the influence of alcohol to the extent that he [*sic*] was incapable of safely operating said vehicle after having been previously convicted of DUI *two or more times*, to-wit: on the 4th day of April, 1989, in Wichita Municipal Court in Case No. TB92126, and on the 3rd day of February, 1998, in Wichita Municipal Court in Case No. 97TM13602.'

"Moody subsequently entered into a plea agreement whereby the State agreed to recommend as to count 1 that the defendant receive a controlling sentence of 1 year in the county jail and a fine of $1,500, to be served by 48 hours in the county jail, less credit for time served, immediately followed by 88 days on house arrest as a condition of probation. As to count 2, the State agreed to recommend a fine of $300 and that the two counts be run concurrently.

"During the plea hearing, the district court observed that the complaint alleged two prior DUI convictions; Moody concurred with the accuracy of that information. The district court further noted [to the defendant] that the court was not bound by the plea agreement and could impose the maximum fine and penalty on each count. The court then specified the maximum fine and penalty as follows:

'[C]ount I, is one year in the County jail and a fine of $2,500, and count II, is up to 6 months in the county jail and a fine of $1,000 and [the court] could in fact order that those two sentences be served consecutively, or one after the other, and also that both fines be paid in the maximum amounts so the total penalty— the maximum penalty that you face is 18 months in the county jail and a fine of $3,500.'

"Moody pled guilty, and at sentencing the district court observed that Moody's criminal history included three, rather than two, prior DUI convictions. Moody concurred [acknowledged] that she did in fact have three prior DUI convictions. Consequently, the court sentenced Moody as a fourth-time offender to a term of 180 days in the Sedgwick County jail (3 days incarceration, followed by 177 days in a work release program), and assessed a fine of $2,500." 34 Kan. App. 2d at 527-28.

On appeal, Moody argues that because the complaint had alleged she had been previously convicted of DUI two or more times, the trial court did not have jurisdiction to sentence her as a fourth-time DUI offender. Moody then asserts that if the court had jurisdiction, the process afforded her did not satisfy her due process requirements. Moody argues to this court that her sentence as a fourth-time offender is illegal because the complaint had alleged two or more prior convictions for DUI; thus, the sentencing judge

did not have jurisdiction to sentence her as a fourth-time DUI offender. The determination whether a criminal sentence is illegal is a question of law subject to unlimited review. *State v. Huff*, 277 Kan. 195, 199, 83 P.3d 206 (2004).

## Prior Court of Appeals Decisions

Before the Court of Appeals, Moody cited *State v. Dyke*, 33 Kan. App. 2d 167, 100 P.3d 972 (2003), and argued that the sentencing judge lacked jurisdiction to sentence her as a fourth-time DUI offender. Noting that *Dyke* represented one of two lines of cases decided by separate panels of the Court of Appeals, Moody asserted that the panel that considered the present case had disagreed with the *Dyke* panel's jurisdictional analysis. The *Moody* panel examined the circumstances as a matter of right to due process rather than a lack of jurisdiction to sentence the defendant and affirmed Moody's sentence as a fourth-time offender. The Court of Appeals panel analyzed the present case by first noting whether jurisdiction exists was a question of law over which that court had unlimited review. *State v. Stough*, 273 Kan. 113, 116, 41 P.3d 281 (2002). The *Moody* panel observed that our court had determined that a complaint which omits an essential element of a crime is fatally defective, and under such circumstances, the trial court lacks jurisdiction to convict the defendant. *State v. Hooker*, 271 Kan. 52, 61, 21 P.3d 964 (2001). The *Moody* panel then observed:

"In *Dyke*, the defendant was charged with one count of DUI. The complaint referenced neither K.S.A. 8-1567(f) nor (g), but instead charged Dyke with DUI ' "after having been convicted of this same offense at least two times previously." ' 33 Kan. App. 2d at 169. Pursuant to a plea agreement, Dyke was sentenced to 90 days in jail, after which she would be placed on probation and enter alcohol counseling. The sentencing court originally imposed a fine of $1,500. However, at that point, the State noted that while Dyke was convicted of a third DUI, he actually had four prior DUI convictions which, pursuant to K.S.A. 8-1567(g), would make the fine $2,500. The district court agreed and imposed a fine of $2,500. 33 Kan. App. 2d at 168.

"On appeal, this court [the Kansas Court of Appeals] held that the trial court lacked jurisdiction to sentence *Dyke* as a fourth-time DUI offender, citing *State v. Horn*, 20 Kan. App. 2d 689, 692, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995), for the rule that 'if a crime is not specifically stated in the information or

is not a lesser included offense of the crime charged, the trial court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented.' 33 Kan. App. 2d at 169-70."

## The *Moody* panel then noted:

"Recently, another panel of this court disagreed with *Dyke*, holding 'that while *Dyke* reached the correct result, it did so for the wrong reason when it based its decision on lack of jurisdiction as opposed to lack of due process.' *State v. Wheeler*, No. 92,428, unpublished opinion filed July 22, 2005; see also *State v. Gardner*, No. 92,649, unpublished opinion filed September 9, 2005 (agreeing with *Wheeler's* rationale and concluding defendant received due process where the complaint charged the defendant with a nonperson felony and defendant received notice at plea stage of maximum penalties for fourth DUI offense). In reaching its conclusion, the *Wheeler* court relied on *State v. Masterson*, 261 Kan. 158, 929 P.2d 127 (1996).

"In *Masterson*, the State's amended complaint charged Masterson as a first-time DUI offender. After a bench trial, Masterson was convicted of a first-offense DUI. At sentencing, the State requested that Masterson be sentenced as a second offender, arguing that when the complaint was filed, the State was unaware of a prior DUI diversion entered into by Masterson. The district court denied the State's request and sentenced Masterson as a first offender. 261 Kan. at 160.

"The State appealed, contending that K.S.A. 22-3201 (setting out the requirements for a complaint, information, or indictment) does not require that the State give a defendant notice of the severity level of the DUI offense being charged. The Kansas Supreme Court disagreed, holding that *although prior DUI convictions are not elements of the offense of DUI*, 'a defendant is entitled *under due process* to notice in the information or complaint of the severity level of the DUI offense being charged . . . .' (Emphasis added.) 261 Kan. at 163. Consequently, the *Masterson* court held that the trial court was correct in sentencing Masterson as a first-time offender. 261 Kan. at 164.

"We agree with the *Wheeler* court that pursuant to *Masterson*, the issue is one of due process rather than jurisdiction. Thus, this court must determine whether due process was met here. The complaint charging Moody expressly references only two prior DUI convictions. Moody pled guilty to, and was convicted of, a third-offense DUI. The fact that Moody actually had three prior DUI convictions was not brought to light until sentencing. At first blush, this appears to constitute an impermissible 'upping the ante' after conviction, akin to the one attempted by the State in *Masterson.*

"Nevertheless, we do not believe Moody's sentence violated due process. A careful review of the basis upon which *Masterson* was decided is instructive on the issue. Notably, *Masterson* overruled *State v. Helgeson*, 235 Kan. 534, 680 P.2d 910 (1984). 261 Kan. 158, Syl. ¶ 2.

"In *Helgeson*, the pertinent version of the DUI statute, K.S.A. 8-1567 (Ensley), contained penalty provisions within three statutory subsections. Subsection (c) set

forth the penalty for a first conviction; subsection (d) set forth the penalty for a second conviction; and subsection (e) set forth the penalty for a third or subsequent conviction. K.S.A. 8-1567 (Ensley).

"Helgeson was not charged with violating any of the specific subsections of the DUI statute; rather, he was charged generally with violating K.S.A. 8-1567 (Ensley). 235 Kan. at 534. Following his conviction for DUI, Helgeson was sentenced as a second offender. Helgeson appealed, arguing that the complaint was deficient for failing to include any allegation of a prior DUI conviction. 235 Kan. at 535.

"Our Supreme Court held: 'A prior D.U.I. conviction is not a statutory element of the crime under K.S.A. 8-1567, and merely bears on the penalty imposed. There was no error in the complaint not charging the prior offense.' 235 Kan. at 536.

"In overruling *Helgeson,* the *Masterson* court noted that the version of the DUI statute at issue in *Helgeson* provided no crime classifications, but merely prescribed the penalties for first, second, and third offenses. On the other hand, the court discerned, the statute at issue in *Masterson* not only prescribed penalties for first, second, and third or subsequent offenses, but it also differentiated the various offenses by the crime classifications of class B misdemeanor, class A misdemeanor, and nonperson felony. 261 Kan. at 163.

"Consequently, the *Masterson* court concluded,

*'because different crime classifications are now specified in the statute,* a defendant is entitled under due process to notice in the information or complaint of the *severity level* of the DUI offense being charged, *i.e., class A or B misdemeanor or nonperson felony.*

'K.S.A. 22-3201(c) (effective in 1993) provides: "When relevant, the complaint, information or indictment shall also allege facts sufficient to constitute a crime or specific crime subcategory in the crime seriousness scale."

'. . . Masterson should have the right to know before trial the *severity level* of the crime being charged.' (Emphasis added.) 261 Kan. at 163-64.

"Thus, in construing the language now contained in K.S.A. 2004 Supp. 22-3201(c), the *Masterson* court equated the phrase 'specific crime subcategory in the crime seriousness scale' with crime classification (*e.g.,* class A or B misdemeanor or nonperson felony).

"Since *Masterson,* the DUI statute has been further revised. In the version applicable here, although third and fourth DUI convictions are both classified identically as nonperson felonies, the penalties for third and fourth or subsequent convictions are distinct. See K.S.A. 8-1567(f) and (g).

"The complaint charging Moody with DUI correctly classified the charge as a nonperson felony. However, the complaint failed to expressly mention that Moody was being charged with a fourth-offense DUI. Instead, the complaint alleged that Moody had committed a DUI 'after having been previously convicted of DUI two or more times, to-wit: on the 4th day of April, 1989, in Wichita Municipal Court in Case No. TB92126, and on the 3rd day of February, 1998, in Wichita Municipal Court in Case No. 97TM13602.'

"While the precise degree of notice necessary to comport with due process remains uncertain, *Masterson* tends to indicate that the crime classification of nonperson felony is all that due process requires in this instance. Because the complaint properly alleged the proper crime classification, due process was met here. Moreover, even if *Masterson* required that the defendant receive notice of the penalties for three prior DUI offenses, rather than the two with which he was specifically charged, we believe Moody received that notice here.

"At the plea hearing, the district court specifically noted the maximum penalties for the defendant's DUI charge were 'one year in the county jail and a fine of \$2,500.' The maximum penalties for a fourth DUI offense are exactly those stated by the district court—*i.e.,* 1 year's imprisonment and a fine of \$2,500. K.S.A. 8-1567(g). The maximum imprisonment for a third DUI offense, on the other hand, is also 1 year's imprisonment, while the fine is 'not less than \$1,500 nor more than \$2,500.' K.S.A. 8-1567(f). Because Moody received notice of the severity level with which she was charged, as well as the maximum penalty for a fourth offense, we affirm the defendant's sentence." 34 Kan. App. 2d at 528-32.

In her petition for review, Moody argues to this court that *Dyke*, rather than *Wheeler* and *Gardner*, was correctly decided. She directs the court's attention in particular to *Dyke*'s focus on the charging document as a jurisdictional instrument. The Court of Appeals panel in *Dyke* stated:

"The charging document is the jurisdictional instrument which gives the court authority to convict a defendant of crimes charged in the complaint or of the lesser included crimes thereof. Conversely, if a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the trial court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented. *State v. Horn*, 20 Kan. App. 2d 689, 692, 892 P.2d 513, *rev. denied* 257 Kan. 1094 (1995).

"In this case, it is clear that Dyke was charged with one count of DUI, third offense. Dyke pled no contest to one count of DUI, third offense. At the plea hearing, the trial court informed Dyke of the maximum fine for a third offense. The State presented a proffer of evidence, at which time the prosecutor noted that Dyke had been convicted of DUI 'on at least two previous occasions.' At the sentencing hearing, Dyke was clearly sentenced for a [fourth] offense.

"The trial court did not have jurisdiction to sentence Dyke for a fourth DUI, even though there is more than adequate evidence to prove that this is indeed his sixth offense. A sentence entered outside the court's jurisdiction is illegal. See *State v. Duke*, 263 Kan. 193, 194, 946 P.2d 1375 (1997).

. . . .

"The trial court was without jurisdiction to sentence Dyke as a fourth DUI offender, which mandated a longer period of postrelease supervision than if he

had been sentenced for a third DUI. His sentence is illegal and must be vacated. The case is remanded for resentencing." 33 Kan. App. 2d at 169-70.

After the Court of Appeals' opinion was filed in the present case, three more decisions have been issued by various panels of the Court of Appeals on this issue. In each case, the panel has rejected the jurisdictional analysis of *Dyke* in favor of a due process analysis of *Moody*. On October 28, 2005, in an unpublished decision in *State v. Barnes*, No. 92,651, the panel found "the rationale in *Moody*, *Wheeler*, and *Gardner* to be in accord with our Supreme Court's precedent in [*State v.*] *Masterson*[, 261 Kan. 158, 929 P.2d 127 (1996)]." On December 16, 2005, in an unpublished decision in *State v. Corkill*, No. 93,120, the panel rejected the jurisdictional analysis of *Dyke* because it conflicted with this court's reasoning in *Masterson*. On March 10, in *State v. Moore*, 35 Kan. App. 2d 274, 129 P.3d 630 (2006), the panel rejected the jurisdictional analysis of *Dyke* in favor of a due process analysis but concluded that the process had not been sufficient in Moore's case.

The question of what process is due in a given case is a question of law over which an appellate court has unlimited review. *State v. Wilkinson*, 269 Kan. 603, 609, 9 P.3d 1 (2000). The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. 269 Kan. 603, Syl. ¶ 2.

In *Moore*, the complaint charged the defendant with DUI after having two or more prior DUI convictions, a nonperson felony. At the preliminary hearing, the State asserted that Moore had two prior DUI convictions. The Court of Appeals panel framed the due process issue as follows:

"The complaint and the State's representations at the preliminary hearing indicated that Moore was being prosecuted as a third-time DUI offender under K.S.A. 2005 Supp. 8-1567(f).

"Nevertheless, the journal entry of sentencing states that Moore was sentenced as a sixth-time DUI offender. Moore was fined $2,500 and sentenced to 6 months in jail with a 12-month postrelease supervision period with the DOC. The 12-month postrelease supervision period is mandatory for fourth and subsequent DUI offenses, but is not a requirement for third DUI offenses. See K.S.A. 2005 Supp. 8-1567(f) and (g). Moreover, fourth and subsequent DUI offenses require

a $2,500 fine whereas third DUI offenses require a fine between $1,500 and $2,500. See K.S.A. 2005 Supp. 8-1567(f) and (g).

"It is apparent that Moore was sentenced under the provisions of K.S.A. 2005 Supp. 8-1567(g), which apply to fourth or subsequent DUI convictions and carry greater penalties than those for third DUI convictions under K.S.A. 2005 Supp. 8-1567(f). Nevertheless, Moore received notice before conviction indicating that he was being charged with a nonperson felony DUI as only a third-time offender. Was this notice sufficient to sentence him as a sixth-time DUI offender under the harsher penalty provisions of K.S.A. 2005 Supp. 8-1567(g)?" 35 Kan. App. 2d at 287.

The *Moore* panel concluded that notice of the penalties is as necessary as notice of the crime classification, stating:

"[I]t is apparent that although K.S.A. 2005 Supp. 8-1567(f) and K.S.A. 2005 Supp. 8-1567(g) have the same severity level, a nonperson felony, the legislature intended to treat them as separate offenses because it mandated separate punishments for them. Even if K.S.A. 2005 Supp. 8-1567(f) and K.S.A. 2005 Supp. 8-1567(g) are not separate offenses, Moore's lack of notice that he would be sentenced under the harsher penalties of subsection (g) if he was convicted as a third-time offender would be a departure from due process. In *Wheeler*, No. 92,428, where Wheeler pled guilty to felony DUI, the panel concluded that due process requires that a defendant charged with DUI receive notice of the crime classification with which he or she is charged *and of the penalties that could result.* Slip op. at 10." 35 Kan. App. 2d at 288-89.

"In summary, sentencing Moore as a sixth-time offender under K.S.A. 2005 Supp. 8-1567(g) when he had received notice that he was being charged as a third-time DUI offender constitutes 'upping the ante' against Moore. Fourth and subsequent DUI convictions are punished more harshly than third DUI convictions. See K.S.A. 2005 Supp. 8-1567(f) and (g). Based on the disparate penalties between third DUI convictions and fourth and subsequent DUI convictions, due process requires that the defendant receive notice of the particular subsection under which the defendant is being charged. If the defendant is never notified of the particular subsection which is being charged but is simply informed that a nonperson felony under K.S.A. 2005 Supp. 8-1567 is being charged, *Masterson* and [*State v.*] *Larson,* [265 Kan. 160, 958 P.2d 1154 (1998),] dictate that the defendant must be sentenced as a third-time offender under K.S.A. 2005 Supp. 8-1567(f). Because the record indicates that Moore received notice that he was being charged only as a third-time offender prior to his conviction, we determine that Moore must be resentenced as a third-time DUI offender under K.S.A. 2005 Supp. 8-1567(f)." 35 Kan. App. 2d at 289-90.

In contrast, the Court of Appeals panel in the present case concluded that under the circumstances, due process did not require

that Moody receive prior notice she was being charged under subsection (g) rather than subsection (f) of 8-1567. The two subsections provide in part:

"(f) On the third conviction of a violation of this section, a person shall be guilty of a nonperson felony and sentenced to not less than 90 days nor more than one year's imprisonment and fined not less than $1,500 nor more than $2,500. . . .

"(g) On the fourth or subsequent conviction of a violation of this section, a person shall be guilty of a nonperson felony and sentenced to not less than 90 days nor more than one year's imprisonment and fined $2,500. . . . After the term of imprisonment imposed by the court, the person shall be placed in the custody of the secretary of corrections for a mandatory one-year period of postrelease supervision, which such period of postrelease supervision shall not be reduced."

The *Moody* panel then noted that both subsections prescribe a sentence of 90 days to 1 year's imprisonment. The *Moody* panel then observed that the possible fine for subsection (f) ranges from $1,500 to $2,500, and a fine of $2,500 is mandatory for subsection (g). In addition, subsection (g) requires a defendant to serve a 1-year period of postrelease supervision.

We note that in *Moody* the panel recognized there is uncertainty about what notice is necessary to comport with sentencing due process. That panel read *Masterson* to indicate that notice of the crime classification of nonperson felony is all that due process requires in the DUI context. The *Moody* panel noted that even if *Masterson* required notice of the penalties for the DUI level at which defendant was sentenced, Moody had received notice of the penalties and of the crime classification prior to sentencing. 34 Kan. App. 2d at 532.

Here, Moody was charged in the complaint with DUI "after having been previously convicted of DUI two or more times, to-wit: on the 4th day of April, 1989, in Wichita Municipal Court in Case No. TB92126, and on the 3rd day of February, 1998, in Wichita Municipal Court in Case No. 97TM13602." The statutory offense is identified as a nonperson felony in the complaint, but the subsection of 8-1567 sentence applicable to Moody is not specified.

Prior to trial, Moody waived the preliminary examination and pled guilty. The Defendant's Acknowledgment of Rights and Entry

of Plea document that Moody signed prior to entering a plea identifies the charge as DUI, nonperson felony, and the range of sentences and fines that may be imposed against her as "[u]p to 1 year in the county jail and a fine of up to $2,500.00." With regard to the potential sentence for one that had a prior conviction under the statute, the document states:

"I understand that in addition to the penalties described above, upon completion of any prison term, I will be required to serve a term of postrelease supervision. The length of the required postrelease supervision will depend upon the severity level of the offense and the amount of good time earned while imprisoned."

At the plea hearing, Moody admitted that she had signed the Defendant's Acknowledgment of Rights and Entry of Plea and denied having any questions about the statutory crime and sentence. The trial court also asked: "Do you understand, Ms. Moody, that regardless of the fact that you've entered into this plea agreement, the Court is not bound by it, it could impose the maximum fine and penalty on each count? In this case, count 1, is one year in the County jail and a fine of $2,500." Moody stated that she understood. After Moody confirmed the two prior DUI convictions alleged in the complaint, the district court accepted her guilty plea and "adjudge[d] that she is guilty of the DUI charge."

Later, at the sentencing hearing, the judge informed Moody that the presentence investigation indicated that she had actually been convicted of three rather than two prior DUI's. Moody acknowledged to the judge that she had been convicted of three prior DUI's. The sentencing judge then asked if there was any reason why a sentence should not be announced in accordance with 8-1567(g); defense counsel said there was not. The following exchange occurred between the judge and Moody:

"THE COURT: Do you concur with the fact you've been convicted of DUI on three prior occasions?

"THE DEFENDANT: Yes, sir.

"THE COURT: Is there any reason then why sentence should not be announced in accordance with 8-1567 subsection (g)?

"[PROSECUTOR]: None from the State, Your Honor.

"[DEFENSE COUNSEL]: Not by defense.

"THE COURT: Is there any reason we should not proceed to sentencing at this point?

"[PROSECUTOR]: No reason from the State, Judge.

"[DEFENSE COUNSEL]: Not by defense."

As required by statute, Moody was sentenced as a fourth-time offender to a term of 180 days in the Sedgwick County Jail, assessed a fine of $2,500, and told that after the 180 days she would "be placed in the custody of the Secretary of Corrections for a mandatory 1-year period of post-release supervision," during which she would "be required to participate in an in-patient or out-patient program for drug and alcohol abuse."

### Jurisdictional Analysis

Generally, constitutional grounds asserted for the first time on appeal are not properly before the appellate court for review, *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003), but a recognized exception to that general rule is when consideration of the theory is necessary to serve the ends of justice or to prevent denial of a defendant's fundamental rights. *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). We have previously stated that an objection based on lack of jurisdiction may be raised for the first time on appeal. *State v. Gayden*, 281 Kan. 290, 293, 130 P.3d 108 (2006).

In her petition for review, Moody asserts that *Dyke's* jurisdictional analysis is correct and should be applied in this case. Our scrutiny of *Dyke's* reasoning, however, reveals weakness. *Dyke's* reasoning was based on the premise that a complaint or information is the jurisdictional instrument that gives a court authority to *convict* a defendant of crimes charged in the instrument. 33 Kan. App. 2d at 169. And the single authority, *State v. Horn*, 20 Kan. App. 2d 689, 892 P.2d 513 (1995), is cited for the principle that a trial court lacks jurisdiction to *convict* a defendant of a crime not specifically stated in the charging document. Without discussing the difference between the charge and a conviction and inconsistency between charge/conviction and sentence, the *Dyke* panel concludes that the trial court did not have jurisdiction to sentence

Dyke for fourth-time DUI after he had been charged with and pled guilty to third-time DUI. 33 Kan. App. 2d at 169-70.

In its analysis, the *Dyke* panel ignored the language of *Horn* which stated: "A conviction based upon a charge not made in the information and not properly before the district court is a clear violation of due process under the Fourteenth Amendment to the Constitution of the United States." 20 Kan. App. 2d at 692.

Even though the language appears in the *Horn* panel's conclusion that the trial court had no jurisdiction, it planted the seed for consideration of due process in the present circumstances. And, as other Court of Appeals panels have noted, the *Masterson* decision on the question of charging and sentencing DUI offenses carries more of a precedential weight than *Horn*, which involved the question whether aggravated sexual battery is a lesser included offense of aggravated criminal sodomy.

The only other case cited for Moody's claim that the district court lacked jurisdiction to sentence her for a fourth DUI offense is *State v. Jackson*, 262 Kan. 119, 138, 936 P.2d 761 (1997). We note that the *Jackson* court held that the defendant, who had been charged with severity level 4 aggravated battery, had been illegally sentenced to the severity level 4 offense because a jury instruction had erroneously lacked the essential element of "causing great bodily harm," instead using the language of severity level 7 aggravated battery. Thus, the *Jackson* court vacated the sentence and remanded with directions to resentence Jackson for a severity level 7 felony. 262 Kan. at 139. We find that because proof of a prior conviction is not an element of a DUI offense, *Jackson* is distinguishable from the present DUI case. See *Masterson*, 261 Kan. at 164.

The *Masterson* court held that *as a matter of due process*, an information or complaint for a DUI offense should state the crime classification—class A or B misdemeanor or nonperson felony. 261 Kan. at 163-64. Later, in *State v. Larson*, 265 Kan. 160, Syl., 958 P.2d 1154 (1998), this court clarified *Masterson*, holding that "[w]here a defendant is convicted of driving under the influence (K.S.A. 1997 Supp. 8-1567) on a complaint which fails to specify the crime severity level, he or she may only be sentenced as a B

misdemeanant." The Court of Appeals panel that decided the present case correctly observed that *Masterson* is the foundation on which Moody built her argument that she was charged and convicted of third-time DUI but sentenced for fourth-time DUI.

### Due Process Analysis

The fallback position, mentioned but not briefed in Moody's petition for review, is that if this is a due process issue rather than a jurisdictional issue, her due process rights were violated because she did not receive notice of the statute's mandatory 1-year period of postrelease supervision until her sentence was imposed. We note that Moody did not file a supplementary brief in this court after her petition for review was granted. In her petition for review, Moody asked this court to review the Court of Appeals' conclusion that the trial court's sentencing her as a fourth-time DUI offender was a due process rather than a jurisdictional question. As an afterthought, Moody suggested in one sentence that if it was a due process matter, the process was not given. She provides no authority for this conclusion. The State filed neither a response to the petition for review nor a supplementary brief.

Although Moody mentions the statutorily imposed fine in her brief in the Court of Appeals, in her petition for review she does not assert a lack of notice that the $2,500 fine was mandatory. Thus, our discussion of due process rights centers on the lack of notice of the statutory mandatory period of postrelease supervision.

K.S.A. 2005 Supp. 22-3210(a)(2) provides that a guilty plea may be accepted in a felony case when "the court has informed the defendant of the consequences of the plea." Only direct consequences, not collateral consequences, are included in the mandates of the statute. *Cox v. State*, 16 Kan. App. 2d 128, 130-31, 819 P.2d 1241 (1991), *rev. denied* 250 Kan. 804 (1992). K.S.A. 2005 Supp. 22-3210 embodies due process requirements as interpreted by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). *State v. Muriithi*, 273 Kan. 952, Syl. ¶ 5, 46 P.3d 1145 (2002). Hence, due process does not require that a defendant be informed of all collateral conse-

quences that might follow from a guilty plea. *State v. Sedillos*, 279 Kan. 777, Syl. ¶ 8, 112 P.3d 854 (2005).

In distinguishing direct consequences from collateral consequences of a plea, a test used by this court asks " 'whether the consequences imposed are a definite, immediate, and largely automatic result of the guilty plea.' " *In re J.C.*, 260 Kan. 851, 857, 925 P.2d 415 (1996) (the possibility of a plea being used to enhance the sentence for a later crime is a collateral consequence) (quoting *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 248, 822 P.2d 72 [1991]).

In *Lester*, the Court of Appeals held that the district court was not required to advise the defendant of the possibility of suspension of his driving privileges because the suspension was a collateral rather than a direct consequence. 16 Kan. App. 2d at 248. Then the *Lester* panel quoted the "definite, immediate, or largely automatic" test from a federal case, *United States v. Lott*, 630 F. Supp. 611, 612 (E.D. Va.), *aff'd* 795 F.2d 82 (1986). 16 Kan. App. 2d at 248.

The *Lester* panel then cited *Cox* for the principle that a defendant need not be informed of collateral consequences of a plea. 16 Kan. App. 2d at 246. The *Cox* panel had cited Rule 11 of the Federal Rules of Criminal Procedure and a Ninth Circuit opinion interpreting the Rule as requiring the district court to inform a defendant of direct consequences but not of every possible collateral consequence. 16 Kan. App. 2d at 130 (quoting *United States v. King*, 618 F.2d 550, 552 [9th Cir. 1980]).

The *Lester* panel, in addition to citing a number of federal cases, noted that "[v]arious state courts also have concluded that a trial court is not required to inform a defendant of the collateral consequences of a guilty plea" and cited a number of state court cases. 16 Kan. App. 2d at 246-47. The test, stated as "definite, immediate, and almost automatic," was applied by this court in *Muriithi*, when determining that the adverse immigration consequences of the defendant's plea were collateral rather than direct. 273 Kan. at 966-67.

Applying the test for distinguishing direct from collateral consequences to the mandatory 1-year postrelease supervision im-

posed on Moody leads inexorably to the conclusion that it is a direct consequence. The mandatory period of postrelease supervision is definite. It immediately follows her period of imprisonment and is automatic. A conclusion that Moody's mandatory postrelease supervision is a direct consequence, of which due process requires her to be advised, would follow rulings in similar cases of other jurisdictions.

In the United States federal courts, before accepting a plea of guilty, the court "must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and *term of supervised release*." (Emphasis added.) Fed. R. Crim. Proc., Rule 11(b)(1)(H). The Court of Appeals of New York holds that mandatory postrelease supervision is a direct consequence of a plea because it has a definite, immediate, and largely automatic effect on a defendant's punishment. Failure to advise a defendant of a direct consequence of his or her conviction requires that the defendant's plea be vacated. *People v. Catu*, 4 N.Y.3d 242, 825 N.E.2d 1081, 792 N.Y.S.2d 887 (2005). In *State v. Johnson*, 182 N.J. 232, 864 A.2d 400 (2005), because a mandatory period of parole supervision constitutes a direct penal consequence of defendant's guilty plea, the New Jersey Supreme Court held the defendant should have been advised of the consequences of his plea, and failure to advise a defendant entitles that defendant to seek vacation of his or her plea. And the Illinois Supreme Court requires the trial court to advise a defendant of a mandatory supervised release term before accepting his or her plea. *People v. Whitfield*, 217 Ill. 2d 177, 840 N.E.2d 658 (2005). In that case, the Illinois court agreed with the defendant's contention that his constitutional right to due process and fundamental fairness was violated because defendant pled guilty in exchange for a specific sentence and received a different, more onerous sentence. 217 Ill. 2d at 188-89.

We note that in several ways, Moody's situation is different from the cited foreign cases:

First, the posture of Moody's circumstances differs from that of a defendant where the trial court simply fails to advise that defendant of the penal consequences for the crime of conviction and

the included mandatory postrelease supervision. Moody was sentenced under a subsection of 8-1567, a different subsection of the statute under which she was charged and convicted; therefore, she was not advised of the mandatory postrelease supervision prior to pleading guilty. Moody was aware of the number of her prior DUI convictions prior to entering her plea. Moody was not surprised when her third prior conviction appeared in the presentence investigation report. Whether Moody's knowledge of the number of her prior convictions affects the due process analysis is an important consideration.

Second, the procedural setting of the foreign cases differs from that of our case. The issue in the foreign cases was whether the plea was knowing and voluntary. That question arose because the trial courts accepted a plea without advising of mandatory postrelease supervision. Here, there is a discrepancy between the offense of which defendant was charged and convicted and the offense for which she was sentenced. Moody was charged and pled guilty to third-time DUI but was sentenced for fourth-time DUI. Moody's due process complaint is not the disparity between crime of conviction and sentence but rather her lack of notice that the mandatory postrelease supervision was included in the sentence for fourth-time DUI.

Whether jurisdiction exists is a question of law over which this court has unlimited review. A complaint which omits an essential element of a crime is fatally defective, and the trial court lacks jurisdiction to convict the defendant of the alleged offense. After careful review, we agree with the rationale of the *Moody* panel's due process determination. Because prior DUI convictions are not elements of the offense of DUI, prosecution of a complaint which fails to indicate each prior offense is not jurisdictionally barred; however, a defendant is entitled under due process to notice in the information or complaint of the severity level of the DUI offense being charged.

Where a defendant with three prior DUI convictions receives notice in the complaint of the severity level of the DUI offense charged, and later at the plea hearing is informed of the maximum penalty for a fourth DUI offense, the defendant is appropriately

sentenced as a fourth-time DUI offender, although the complaint alleged only "two or more" prior offenses. We conclude under the circumstances of this case that the defendant received due process and the judge had jurisdiction to sentence Moody as a fourth-time DUI offender and impose the mandatory postrelease supervision required by statute.

## Ordering Reimbursement of BIDS Fees Without Considering Ability to Pay

This issue is controlled by our recent decision in *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006), which concluded that a sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose. Under the facts of this case, the sentencing judge's failure to follow the statutory procedure violated the statutory rights of the defendant. See 281 Kan. 538, Syl. ¶ 1. The matter is remanded to the district court for resentencing pursuant to K.S.A. 2005 Supp. 22-4513.

Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part. The matter is remanded to the district court for further proceedings.

LUCKERT, J., concurring in part and dissenting in part: I agree with the majority's analysis that the issue which Moody raises is one of due process, not jurisdiction. However, I would not reach the issue of whether there was a due process violation. Instead, I would conclude that Moody abandoned this issue when seeking review of the Court of Appeals' decision. Moreover, if the issue of due process is to be analyzed, I would adopt a different analysis than used by the majority.

In her petition for review, Moody asked this court to review the Court of Appeals' holding that the trial court's sentencing of her as a fourth-time DUI offender raised a due process rather than a jurisdictional question. Consequently, the only issue fully pre-

sented for this court's review is the question of whether the failure to allege the number of underlying convictions which would enhance the penalty deprived the court of jurisdiction. Moody's one-sentence reference to the question of whether the process accorded was the process which was due, with no citation to authority or expansion of the issue, is insufficient to preserve the issue for our review. An issue not adequately briefed by the appellant is deemed abandoned. *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004).

Furthermore, since the majority chose to address the question, I would suggest that the more appropriate rationale for their decision, in light of the holding that there was no jurisdictional defect, would be to conclude that Moody's plea waived any defect in the complaint. See K.S.A. 22-3208(4) ("A plea of guilty or a consent to trial upon a complaint, information, or indictment shall constitute a waiver of defense and objection based upon the institution of the prosecution or defects in the complaint . . . other than it fails to show jurisdiction in the court or to charge a crime.").

Additionally, I respectfully suggest that much of the majority's analysis is irrelevant to the question before us. Moody does not raise an issue about whether her plea complied with K.S.A. 2005 Supp. 22-3210 or with constitutional due process requirements. Therefore, the issue of whether postrelease supervision is a direct consequence of a plea, the issue to which much of the majority's analysis relates, is not raised in this case.

The more appropriate analysis would have been whether there was a defect in the complaint against Moody because the complaint did not alert her to the possibility of postrelease supervision. For such an analysis under the United States Constitution see *United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir. 2005) ("[W]e are bound by existing precedent to hold that the *Almendarez-Torres[v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998),] exception to the rule announced in *Apprendi* [*v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000),] and extended to the Guidelines in [*United States v.*] *Booker*, [543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005),] remains good law. . . . We therefore conclude that the government need not charge

the 'fact' of a prior conviction in an indictment and submit it to a jury.").

An analysis under the Kansas Constitution would also be required, raising the question of whether K.S.A. 2005 Supp. 22-3201(c) creates a due process requirement in Kansas by requiring a complaint, indictment, or information to "allege facts sufficient to constitute a crime or specific crime subcategory in the crime seriousness scale." The majority does not address this question directly. Rather, the holding in this case muddies the question of how to interpret K.S.A. 2005 Supp. 22-3201(c) and seems to conflict with the holding in *State v. Masterson*, 261 Kan.158, 164, 929 P.2d 127 (1996), which stated that "a defendant is entitled under due process to notice in the information or complaint of the severity level of the DUI offense being charged." 261 Kan. at 163.

With regard to the question of the court order for reimbursement of the State Board of Indigents' Defense Services fee, I dissent on the same basis as I did in *State v. Robinson*, 281 Kan. 538, 548, 132 P.3d 934 (2006).