NOT DESIGNATED FOR PUBLICATION

No. 121,787

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MUHAMMAD ISMAEL WALIALLAH,
*Appellant*,

v.

STATE OF KANAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed February 12, 2021. Affirmed.

*Wendie C. Miller*, of Kenneth B. Miller, Atty at Law, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: Muhammad Ismael Waliallah appeals the Sedgwick County District Court's denial of his request for habeas corpus relief under K.S.A. 60-1507 following an evidentiary hearing. On appeal, Waliallah contends that the district court erred in denying his K.S.A. 60-1507 motion. Although he presents several arguments in support his position, we find none of them to be persuasive based on our review of the record in light of Kansas law. Thus, for the reasons set forth in this opinion, we affirm the district court's decision denying Waliallah's request for habeas corpus relief.

1

In November and early December 2012, Waliallah committed a series of robberies of several businesses in Wichita. The State originally charged Waliallah with one count of robbery and nine counts of aggravated robbery. Joseph Behzadi was appointed to represent Waliallah and was successful in negotiating a plea agreement with the State prior to trial.

Under the terms of the written plea agreement—which was signed by Waliallah and both counsel—the State agreed to reduce the nine aggravated robbery charges to nine counts of robbery. In exchange, Waliallah agreed to plead guilty to a total of 10 counts of robbery. Both parties acknowledged in writing that Waliallah's anticipated criminal history score was A and agreed to recommend a controlling sentence of 192 months in prison.

In addition, Waliallah and Behzadi signed an "Acknowledgment of Rights and Entry of Plea" form in which Waliallah stated that he knew that the actual sentence to be imposed would be "a matter within the control of the Judge" and that "the Court may impose . . . any and all of the maximum penalties and maximum fines." The form also set out the sentencing range, potential fines, and term of postrelease supervision for each of the 10 counts to which Waliallah agreed to plea guilty.

On the same day that Waliallah executed the plea documents, he waived his right to a preliminary hearing and formal reading of the complaint. The case then proceeded to a plea hearing. The State presented the plea documents to the district court and stated the terms of the agreement on the record. In turn, Behzadi affirmed that the State's recitation of the terms of the agreement was correct. After inquiring into Waliallah's understanding of the plea agreement and the legal rights he would be waiving, the district court found factual bases to support each of the counts. The district court also found that Waliallah

had entered into the decision to plead to the amended counts—and to waive his rights—knowingly and voluntarily. At the end of the plea hearing, the district court accepted Waliallah's pleas and found him guilty on all 10 counts of robbery.

At the sentencing hearing, the parties agreed that Waliallah's prior convictions placed him in the criminal history category A. The district court then heard from representatives of the victims of Waliallah's crimes and Behzadi presented an argument in mitigation. Ultimately, the district court sentenced Waliallah to 136 months—the highest penalty in the applicable sentencing gridbox—on one count of robbery as the base offense. It then sentenced him to 34 months on the remaining nine counts and ran each consecutively. Nevertheless, the district court capped the total term of imprisonment at 272 months—which was double the base offense. Later, the court also imposed restitution.

Waliallah appealed his sentences to this court. A panel of this court dismissed in part the appeal for lack of appellate jurisdiction and affirmed in part the district court. In doing so, the panel found that the district court was not bound by the terms of the plea agreement and that it could not review Waliallah's sentences because they were within the presumptive sentence range for the crimes of robbery. *State v. Waliallah*, No. 111,214, 2014 WL 7566927 (Kan. App. 2014) (unpublished opinion). On September 24, 2015, the Kansas Supreme Court denied Waliallah's petition for review and a mandate was issued.

Within one year of the filing of the mandate, Waliallah filed a motion seeking habeas corpus relief under K.S.A. 60-1507. Material to this appeal, he alleged that his pleas were not knowingly and voluntarily entered because the district court had misstated the law regarding the maximum sentence he could receive. In passing, Waliallah also alleged malicious prosecution and ineffective assistance of counsel.

3

The district court appointed Roger Falk to represent Waliallah during the K.S.A. 60-1507 proceedings. Nonetheless, Waliallah filed a pro se memorandum in support of his habeas corpus motion in which he argued that the district court's failure to advise him on the record of the maximum sentence he could receive violated his due process rights. Waliallah also briefly claimed that Behzadi had misled him as to the maximum penalty he faced.

On June 11, 2018, the district court held an evidentiary hearing on Waliallah's K.S.A. 60-1507 motion. At the hearing, Waliallah testified on his own behalf and called Behzadi as a witness. Although Behzadi could not recall specifics from a case he handled six years earlier, he provided a picture of his representation that was substantially different than Waliallah's portrayal.

Behzadi testified regarding his general practice when representing a criminal defendant. In doing so, he emphatically asserted that he would never ask a client to sign an Acknowledgment of Rights and Entry of Plea form without first reading it to the client or asking the client to read it. Behzadi also testified that his standard practice was to review the form and the accompanying plea agreement with his clients before asking them to sign. Behzadi further testified that he would never sign an Acknowledgment of Rights form without reviewing it with his client.

Behzadi's testimony directly contradicted Waliallah's assertion that his attorney had provided the Acknowledgment of Rights form to him just before the plea hearing began and simply told him to sign it. According to Waliallah, his attorney discussed the plea agreement with him at the jail a couple of weeks before the hearing. Although he signed the plea agreement, Waliallah indicated that he did not date it at that time. He further claimed that no one informed him of the maximum sentence on the original charges or on the amended charges. Waliallah claimed that he would not have accepted the plea if he had known the actual potential consequences.

4

Waliallah also claimed that no one explained to him the differences between concurrent and consecutive sentences, nor did anyone explain to him what constituted the base offense. Yet Waliallah admitted that Behzadi had discussed the charges filed against him in their first meeting and that he understood that the plea agreement involved running some of the sentences concurrently and some consecutively. However, Waliallah asserted that he did not attach importance to this information because he relied on the 192-month number. Furthermore, Waliallah claimed that Behzadi never showed him the sentencing grid or explained to him how it worked.

On the other hand, Behzadi testified that he never relied on the State's assessment of the maximum penalty that one of his client's faced. Instead, he would look at the sentencing guidelines and perform his own calculations. Behzadi also testified that it was his practice when presenting a plea offer to one of his clients to inform the client of the potential consequences of the original charges in comparison to the potential consequences of the plea offer. This would include discussing the maximum penalties for the offenses. In addition, it would include explaining the differences between consecutive and concurrent sentences where a complaint listed multiple charges. Based on the information provided in the acknowledgment, Behzadi believed that he would have informed Waliallah that the district court could impose a maximum sentence of up to 272 months in prison unless an upward departure was imposed.

Following the presentation of the testimony and the introduction of five exhibits into evidence, the district court took judicial notice of the underlying criminal case. The district court then stated that it found Waliallah's testimony about the advice provided by Behzadi to be dubious. Although the district court recognized that Behzadi had very little recall about his representation of Waliallah six years earlier, it found that Behzadi's description of his standard practices demonstrated legal competency and defied Waliallah's description of the events that surrounded the entry of his pleas. The district court also relied on Waliallah's failure to object or question anything during the plea

5

colloquy. As a result, the district court found that Waliallah failed to carry his burden to demonstrate a justifiable basis to withdraw his plea. The district court concluded that Waliallah failed to establish deficient representation under the *Edgar* factors and that he knowingly and voluntarily entered his pleas. After the district court denied his pro se motion to reconsider, Waliallah filed this appeal.

ANALYSIS

A prisoner in state custody may file a collateral challenge of a conviction or sentence on constitutional grounds under K.S.A. 60-1507(a). When, as here, the district court grants the movant an evidentiary hearing on his or her claims, we apply a mixed standard of review. We review the district court's factual findings for substantial competent evidence in support. In doing so, we give great deference to the district court's findings and are not to reweigh the evidence, make credibility determinations, or resolve conflicting evidence. Once the underlying facts are established, we conduct a plenary review of the district court's legal conclusions. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

Here, the district court expressed some difficulty in its characterization of the action as a habeas corpus proceeding under K.S.A. 60-1507 or as a plea-withdrawal proceeding under K.S.A. 22-3210. Analytically, there is no distinction. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires pleas to be entered knowingly and voluntarily. *Brady v. United States*, 397 U.S. 742, 755-56, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). In addition, Waliallah alleges ineffective assistance of defense counsel, which is also a constitutional issue. See *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014).

K.S.A. 2019 Supp. 22-3210 provides the framework for analyzing a plea. See *State v. Hill*, 311 Kan. 872, 876, 467 P.3d 473 (2020) (characterizing motion challenging due process of plea entry as request to withdraw pleas); *State v. Kelly*, 291 Kan. 563, 566, 244 P.3d 639 (2010) (construing pro se motion under K.S.A. 60-1507 as a motion to withdraw plea under K.S.A. 22-3210). "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2019 Supp. 22-3210(d)(2). The Kansas Supreme Court has defined manifest injustice within this context to mean something "obviously unfair" or "shocking to the conscience." *White*, 308 Kan. at 496.

The defendant bears the burden of establishing that a manifest injustice warrants withdrawal of his or her plea, and an appellate court reviews the district court's decision for an abuse of discretion. See *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018) (citing *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 [2006]). A district court abuses its discretion when its decision is arbitrary, fanciful or unreasonable or when the court bases its decision on an erroneous application of the facts or law. *Johnson*, 307 Kan. at 443. In the present case, we find no abuse of discretion.

A district court considering a request to withdraw a plea generally examines three factors: (1) the quality of representation; (2) the circumstances surrounding the plea that suggest the defendant might have been misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010); *Edgar*, 281 Kan. at 36. These factors—commonly referred to as the *Edgar* factors—are designed to direct the inquiry. However, any factor bearing on the defendant's knowledge and voluntariness of his or her plea should be considered by the court. See *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011).

7

On appeal, Waliallah contends that his pleas were not knowing and voluntary. He argues that the district court violated his due process rights by failing to apprise him adequately of the potential consequences of his pleas and because his defense counsel provided ineffective assistance in failing to advise him of the potential consequences of the originally charged offenses and the amended offenses. These are two distinct—but interrelated—issues.

*Preservation of Issue for Appeal*

As a preliminary matter, the State contends that Waliallah's challenge to the sufficiency of the district court's recitation of the potential consequences of his pleas is not properly before the court. A review of the record reveals that Waliallah raised the claim that the district court failed to advise him of the potential penalties associated with his plea in his motion. Likewise, his claim for ineffective assistance was incidentally raised in his motion. In his pro se memorandum in support of his motion, Waliallah again argued that the district court had violated his due process rights by failing to apprise him of the maximum penalty.

When asked by the district court to summarize Waliallah's claims at the evidentiary hearing, his attorney stated the issue as whether the defendant made a knowing and intelligent waiver of his rights when entering guilty pleas to 10 counts of robbery. Specifically, his attorney said that "[t]he principal issue here is that the defendant advises that he was never properly informed of what his potential sentence was that he was looking at prior to entering his plea. And I think that's the crucial issue in the case." The State restated the issue as trial counsel had "improperly informed the movant regarding the maximum penalty that he faced by law with the sub-issue concerning whether the plea was knowing and voluntary."

Even though the evidence and argument at the hearing focused on the ineffective assistance of counsel claim, Waliallah did not affirmatively waive any other arguments. In Kansas, waiver is generally defined as the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist on what the law affords. *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 117, 542 P.2d 297 (1975). "Waiver must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right." *Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992).

Because K.S.A. 60-1507 has specific pleading requirements, a movant may waive an argument by failing to raise it in his or her motion. See *Kelly*, 291 Kan. at 564-65; *Pabst v. State*, 287 Kan. 1, 25, 192 P.3d 630 (2008). But no authority requires a movant to present evidence in support of a claim at an evidentiary hearing when the movant believes that the claim is established by the transcript and documents filed in his or her criminal case. Under the circumstances presented, we conclude that Waliallah properly raised the issue of due process in his motion for relief, and we will address the issue on the merits.

*Due Process Claim*

Before accepting a plea, the district court must affirmatively establish a knowing and voluntary waiver of the constitutional rights extended to a criminal defendant. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). K.S.A. 2019 Supp. 22-3210(a) encompasses the essential elements for entering a knowing and voluntary plea. See *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006). In particular, the statute provides:

> "(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

9

(1) The defendant or counsel for the defendant enters such a plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea." K.S.A. 2019 Supp. 22-3210(a).

On appeal, Waliallah bases his argument on an alleged failure by the district court to advise him at the plea hearing of the potential consequences of entering his pleas. Contrary to Waliallah's assertions, the district court did not *misstate* the potential consequences of Waliallah's pleas. Rather, the district court correctly noted that the sentencing range for each of the robbery counts was 31 to 136 months. The court also advised Waliallah that the sentences could be run consecutively.

It is undisputed, however, that the district court did not specifically advise Waliallah that his maximum penalty could be double the base offense for a total sentence of 272 months in prison. But we do not find that this omission constitutes a misstatement of the applicable penalty. Instead, the district court's recitation of the potential consequences of Waliallah's pleas was incomplete.

In Kansas, a district court has the duty to inform a criminal defendant of the direct consequences of his or her plea before accepting that plea. "This includes situations where the sentence could be significantly longer if various counts are run consecutively." *McGoldrick v. State*, 33 Kan. App. 2d 466, 469, 104 P.3d 416 (2005). Still, a district court's failure to comply strictly with the statutory requirements for accepting a plea does not—in and of itself—demand withdrawal of a plea if the totality of the circumstances

10

demonstrate that the plea was otherwise knowingly and voluntarily made despite the technical deficiency. *Beauclair*, 281 Kan. at 237. Here, there is other evidence in the record that is sufficient to establish that Waliallah knowingly and voluntarily entered his plea.

Besides informing Waliallah of the sentencing range for each robbery offense, the district court also asked questions to determine his understanding of consecutive and concurrent sentences. In response to these questions, Waliallah stated that he understood. At the hearing on the motion for habeas corpus relief, Waliallah claimed he misunderstood the district court's questions and believed that a consecutive sentence referred to the ordering of the sentences imposed in the present case in relation to sentences previously imposed in other cases.

Although the district court did not specify that the sentences for Waliallah's pleas to robbery could be ordered to run consecutively, the record establishes that Waliallah understood that this was a possibility. In particular, Waliallah testified that his trial counsel, Behzadi, had explained the plea agreement. As a result, Waliallah understood that the sentencing recommendation of 192 months was devised by requesting that the district court run the sentences on some of the robbery counts consecutive to one another while running the sentences on some of the other robbery counts concurrently.

A review of the language of the plea documents signed by Waliallah and the statements made by the district court at the plea hearing reveal that no reasonable person would have believed that 192 months was the maximum sentence he could receive by entering guilty pleas to 10 counts of robbery. Specifically, the plea agreement stated that the 192-month sentence was a joint *recommendation* to the district court. Moreover, the Acknowledgment of Rights and Entry of Plea stated Waliallah understood that "the court may order that the sentence imposed *for each offense* be served concurrently (served at the same time) or consecutively (served one after the other) but that "the total length of

11

my sentence could not be *more than twice the base sentence* without an upward departure."

Also, at the plea hearing, the district court specifically asked Waliallah whether he understood that the sentencing judge was not bound by the sentencing recommendations within the plea agreement. Waliallah confirmed that he understood. Later in the plea hearing, the district court further inquired as to whether Waliallah understood that he would be unable to withdraw his plea solely because the district court failed to follow the plea agreement.

Because Waliallah understood the district court had the legal authority to run all the sentences consecutively, he should have anticipated that he could potentially receive a maximum sentence greater than 192 months in prison. Furthermore, because he understood that the controlling sentence would be capped at double the base offense, he should have anticipated that he could potentially be sentenced to 272 months. At the very least, we find nothing in the transcript of the plea hearing to suggest that Waliallah did not understand the favorable disposition he was obtaining by entering into the plea agreement.

We also note that Waliallah asked no questions of the district court at the plea hearing. Likewise, he expressed no uncertainty or hesitation in acknowledging the plea agreement. Although Waliallah now claims that he did not review the Acknowledgment of Rights and Entry of Plea form with his attorney, his signature appears on the document as well as the signature of trial counsel.

By signing the Acknowledgment of Rights and Entry of Plea form, Waliallah agreed in paragraph 17 that

"I *have read* this 'Defendant's Acknowledgment of Rights and Entry of Plea' *or have had it read to me*, and I *fully understand its contents*. I *fully and completely understand the consequences of my plea(s)*, and I am entering my plea(s) in consideration of what I believe is my best welfare and in my own best interest." (Emphases added.)

Although such language is not conclusive proof that a criminal defendant read the document before signing it, this court has relied on such provisions when a criminal defendant alleged that he did not understand the nature and consequences of his plea. See *Padilla-Hernandez v. State*, No. 98,274, 2008 WL 4068047, at *2 (Kan. App. 2008) (unpublished opinion). Additionally, Behzadi testified at the hearing on the motion for habeas corpus relief that he would never sign such a document—and would never permit one of his clients to sign such a document—unless the client had read the document or had the document read to him or her before signing.

Waliallah acknowledged by signing the plea documents that he understood the sentencing ranges and potential fines for each of the 10 robbery charges. He also acknowledged that he understood the meaning of "concurrently" and "consecutively," as well as the fact that the total length of his sentence could not be more than twice his base sentence. As a matter of simple arithmetic, Waliallah knew or should have known that the maximum sentence he could serve—absent an upward departure—was 272 months in prison. Likewise, Waliallah acknowledged by signing the plea documents that he knew the district court was not bound by the terms of the plea agreement and could impose "any and all of the maximum penalties and the maximum fines."

Significantly, the district court found Behzadi's testimony at the hearing on the motion for habeas corpus relief to be credible. On the other hand, the district court found that Waliallah's testimony was not credible. It is not our role on appeal to make credibility determinations or to reweigh the evidence. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). Thus, based on the totality of the circumstances, we find that

Waliallah voluntarily and knowingly entered his pleas to the amended charges of 10 counts of robbery.

*Ineffective Assistance of Counsel Claim*

Waliallah also contends that his trial counsel was ineffective. A postsentence motion to withdraw a plea based on ineffective assistance of counsel must meet the constitutional standard set by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014). The standard has two parts. The first requires the defendant to establish that counsel's performance was objectively unreasonable within the applicable circumstances. The second requires the defendant to establish prejudice from counsel's deficient representation. *Kelly*, 298 Kan. at 969 (citing *Strickland*).

Again, Waliallah bears the burden of establishing ineffective assistance of counsel to a preponderance of the evidence. *Moll v. State*, 41 Kan. App. 2d 677, 683, 204 P.3d 659 (2009). In establishing a deficiency in the legal representation, that burden of proof requires a claimant to overcome a strong presumption that counsel's conduct fell within a broad range of reasonable professional assistance. *Kelly*, 298 Kan. at 970. In evaluating counsel's conduct, we must make every effort to eliminate the distorting effects of hindsight by evaluating the conduct from counsel's perspective at the time. *Crowther v. State*, 45 Kan. App. 2d 559, 564, 249 P.3d 1214 (2011).

Defense counsel need not advise a client of all consequences arising from a plea but does have an obligation to discuss with a criminal defendant the immediate consequences of entering a plea. See *State v. Moody*, 282 Kan. 181, 194-95, 144 P.3d 612 (2006). At a minimum, these consequences include the maximum criminal exposure the defendant can expect within circumstances within defense counsel's knowledge. See *State v. White*, 289 Kan. 279, 287, 211 P.3d 805 (2009). Assuming a defendant's criminal

history score is accurate and there is no motion for an upward sentencing departure, defense counsel should be able to predict with reasonable accuracy what the maximum prison term his or her client could receive.

In preparing a criminal defendant to enter a plea that involves amended charges, defense counsel's duty to inform his or her client of the potential consequences extends beyond informing the client of the maximum potential prison term related to the pleaded-to charges. It also includes informing the client of the maximum potential prison term associated with the original charges. With this information, the client should be in a position to make an informed decision about the risks of accepting the State's plea offer and waiving his right to a jury trial. See *State v. Shears*, 260 Kan. 823, 830-31, 925 P.2d 1136 (1996).

According to Waliallah, his attorney did not inform him of the potential consequences if he accepted the State's plea offer. The difficulty with Waliallah's position on appeal, however, is that the district court did not find his testimony credible. Even though his attorney could not specifically state the advice he provided to Waliallah before entering the plea, he was able to offer substantial testimony regarding his usual practices when representing a criminal defendant. Under oath, the attorney vehemently denied that he would have simply relied on the State's statement of Waliallah's potential prison time. Instead, he testified that he would have made his own calculations.

Waliallah's attorney also testified that it was his practice to review the potential penalty for the original charges and any potential amended charges when the State makes a plea offer. According to the attorney, he would use this information to discuss the reduced charges being offered by the State with his client. He further testified that he would have followed his general practices in representing Waliallah. Moreover, after reviewing the acknowledgment form, Behzadi specifically testified that he believed he

15

advised Waliallah that the district court could impose a maximum prison term of 272 months.

While Behzadi's testimony was not conclusive, it is significant that the district court found it to be credible and relied on it in making its decision. As a result, we find that the attorney's testimony was sufficient for the district court to find that it is more probably true than not true that Waliallah was advised of the consequences of the plea agreement prior to pleading guilty to the 10 counts of robbery. Because the district court found Waliallah's testimony not to be credible, we have no reason to substitute our judgment for that of the district court.

In light of the district court's findings—which are supported by the evidence presented at the motion hearing—we conclude that Waliallah failed to establish that the representation provided to him at the time he entered his pleas was legally deficient. In addition, the testimony offered by Waliallah's attorney is supported by the plea documents signed by Waliallah. Although Waliallah cites *Earls v. State*, No. 105,554, 2012 WL 686817, at *5 (Kan. App. 2012) (unpublished opinion), in support of his argument, we find it distinguishable from the present case. Here, the attorney who represented Waliallah testified that he would not have permitted his client to sign the plea documents without reviewing them with him. As discussed above, the Acknowledgment of Rights and Entry of Plea form provided Waliallah with adequate information to determine the maximum possible sentence under the terms of the plea agreement.

Because Waliallah has failed to carry his burden on the first part of the *Strickland* test, it is unnecessary to evaluate the prejudice part of the test. Nevertheless, we noted that Waliallah's claim that he would have rejected the State's plea offer if he had known that he could face up to 272 months in prison is not objectively reasonable. As indicated above, Waliallah knew that the district court was not bound by the recommendation in

16

the plea agreement and there is nothing in the record to suggest that the State breached its obligation regarding the recommended sentence.

CONCLUSION

In summary, for the reasons set forth above, we find that the district court did not err in denying Waliallah's habeas corpus motion filed pursuant to K.S.A. 60-1507. For the same reasons, we find that the district court did not err in denying his motion to reconsider. Thus, we affirm the district court.

Affirmed.