No. 123,763

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN WAYNE WALLACE,
*Appellant*.

SYLLABUS BY THE COURT

1.

Neither due process nor K.S.A. 2021 Supp. 22-3210(a) require the district court to inform defendants of the collateral consequences of entering a guilty or nolo contendere plea to a felony.

2.

The potential loss of the right to vote is a collateral consequence of entering a guilty or nolo contendere plea to a felony.

3.

The potential loss of the ability to possess a firearm is a collateral consequence of entering a guilty or nolo contendere plea to a felony.

Appeal from Morris District Court; MICHAEL F. POWERS, judge. Opinion filed August 19, 2022. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Laura E. Viar*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

1

Before MALONE, P.J., SCHROEDER and HURST, JJ.

HURST, J.: Justin Wayne Wallace pled nolo contendere to felony criminal threat, misdemeanor battery, and misdemeanor criminal damage to property related to an incident in November 2019. Before sentencing, Wallace moved to withdraw his plea—the district court denied the motion for lack of good cause. Wallace appeals, arguing that his pleas were not fairly or understandingly made because the district court failed to inform him that his felony plea would limit his ability to possess firearms and vote. However, the deprivation of the right to possess a firearm or the right to vote are collateral consequences of Wallace's felony nolo contendere plea—not direct consequences—as such, the district court was not required to inform Wallace of these collateral consequences. As Wallace alleges no other error, this court affirms the district court's denial of Wallace's motion to withdraw his pleas.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2019, the State charged Wallace with felony burglary, felony aggravated battery, felony criminal damage to property, and felony criminal threat for an incident at an apartment in late November 2019. Wallace entered into a plea agreement under which the State agreed to dismiss the burglary charge and amend the felony aggravated battery and criminal damage to property charges to misdemeanors if Wallace entered nolo contendere pleas to the felony criminal threat, misdemeanor battery, and misdemeanor criminal damage to property charges.

Before accepting Wallace's pleas the district court asked if he understood the charges, to which Wallace agreed he did. The court then explained that Wallace had a right to a speedy trial and that he could change his mind about his pleas and proceed to trial any time before the court accepted the pleas—but explained that once the court accepted his pleas, Wallace's ability to withdraw would not be "a sure thing, like it would

2

be today." The court then explained the trial rights Wallace would be waiving by entering a plea together with waiving his right to any defenses to the charges he pled to. Wallace confirmed he had no questions about his trial rights, and that he understood by entering a plea he would be giving up his right to a trial.

The court explained Wallace's charges and the possible sentences for each. Wallace confirmed he understood and did not have any questions about his possible sentences. The court then asked Wallace if he was promised anything beyond the plea agreement terms to get him to plead or if he was forced to plead in any way, and Wallace said he was not. Next, the State summarized the evidence related to Wallace's charges, and Wallace's counsel made no objections. The court asked Wallace if he understood his charges or if he wanted the court to "walk [him] through each of [the charges], bit by bit." Wallace confirmed he understood his charges and declined any additional explanation.

The court then had the following exchanges with Wallace:

"THE COURT: Okay. You're represented by Mr. Bryant. You feel like you've had enough time to talk with him about your case?

"THE DEFENDANT: I do. (Unintelligible.)

"THE COURT: Okay. Have you—has he gone over, with you, the charges against you, the facts and elements that the State would have to prove, what kind of defenses you might have, that sort of thing?

"THE DEFENDANT: Yeah. He's been very thorough, Your Honor.

"THE COURT: Okay. Thank you. Do you—do you need any time to talk with him, today. I mean, I can give you time, right now, if you need to talk with him.

"THE DEFENDANT: Well, I believe I'm okay. He's—he's been—he's been very thorough, and kept up, with me, on everything. I think it's—it's all right, Your Honor.

. . . .

"THE COURT: Okay. Mr. Wallace, the last couple things. Are you taking any medication, right now, that affects your ability to make decisions, and think clearly?

"THE DEFENDANT: No, Your Honor.

"THE COURT: Is—are—are—do you have some medication prescribed for you that, actually, helps you make decisions, but that you haven't taken, today?

"THE DEFENDANT: No, Your Honor.

. . . .

"THE COURT: Do you have any reason, at all, why I shouldn't accept the plea from you?

"THE DEFENDANT: No, Your Honor.

"THE COURT: Okay. The Court finds that Mr. Wallace is alert and intelligent, understands the charges against him, as amended, at Counts 2 and 3, and as originally charged at Count 4; find [*sic*] that he understands the por—potential consequences, and that is a factual basis for those."

Wallace then pled no contest to the three charges against him, and the district court accepted his pleas, finding he made them freely, knowingly, and voluntarily with the advice of counsel.

About two weeks later Wallace had a change of heart and moved to withdraw his pleas—alleging "innocence in relation to the charges." The motion asserted that he "may need to make allegations against Counsel" and that his counsel intended to withdraw from representation. At his plea hearing, Wallace's counsel withdrew from the representation and the court appointed Wallace new counsel.

In November 2020, the district court held a hearing on Wallace's motion to withdraw his pleas. Wallace testified that he did not realize he was pleading to a felony and that he was "not really guilty of this stuff, and I think I can—I can make that known," and explained that he did not "want to take the plea, because that's really not the way it happened." Wallace then complained about his former counsel's representation—stating that he felt his attorney was not "on [his] team" and did not feel he was there to help him. Wallace's plea withdrawal counsel then asked if he had discussed with his prior counsel what the impact of a plea to a felony would include, and Wallace responded, "Well,

4

maybe briefly, but not really." Wallace and his counsel then had the following exchange about his former counsel's representation:

"Q: Did he talk to you about (unintelligible) such as the issue of ownership of firearms?

"A: No. We never talked about that, I don't think.

"Q: Do you know, is that a concern to you, now?

"A: Absolutely. Absolutely. I—I live in the country, and hunt every year, and have people—relatives come to hunt, and yeah, yeah, that's a big deal.

"Q: Did he talk to you about the fact that a felony conviction may impede your ability to be employed?

"A: I don't remember talking about that, no.

"Q: Did he discuss, with you, the fact that it may impede your ability to vote, under certain circumstances?

"A: I don't remember that either."

Wallace's counsel also called his former counsel to testify and asked if he had discussed the impact Wallace's felony plea could have on his civil rights. Wallace's former counsel testified that he discussed the consequences of the no-contact order with the alleged victim but said, "I don't recall whether I went over firearm possession and voting rights. I, traditional [*sic*], go over, at least, the voting side of things, but I—I honestly don't have recollection whether we discussed those or not." Wallace's counsel asked the court to withdraw Wallace's pleas because, as Wallace testified, his ability to hunt and possess firearms was important and his prior counsel had no recollection of discussing the impact of Wallace's felony plea on his firearm possession and voting rights.

Ultimately, the district court found that Wallace had failed to establish good cause to withdraw his pleas. In denying Wallace's motion, the district court found that Wallace was represented by competent counsel, was not misled or mistreated in any way, and that he was completely advised of his rights. The district court then sentenced Wallace to a

controlling 12 months' probation for his felony criminal threat conviction, with his misdemeanor sentences running concurrent to his felony sentence. Wallace timely appealed.

## DISCUSSION

Wallace brings only one issue on appeal—he claims that he was denied due process in entering his pleas because the district court did not inform him that his pleas would result in the loss of his right to possess firearms and the loss of his right to vote. Wallace claims that as a result he did not knowingly and voluntarily enter his pleas and therefore the district court abused its discretion by denying his motion to withdraw pleas.

Wallace moved to withdraw his pleas before sentencing, and a nolo contendere plea "*for good cause shown* and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." (Emphasis added.) K.S.A. 2019 Supp. 22-3210(d)(1). Courts look to these three factors to determine if a defendant has shown good cause to withdraw their plea: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). Although these factors should guide a court's analysis, they are not an exhaustive list. See *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010).

This court reviews a district court's denial of a presentence motion to withdraw a plea for an abuse of discretion. The district court abuses its discretion when its decision is based on an error of fact or law, or if no reasonable person would agree with the decision. Wallace carries the burden of proving the district court abused its discretion in denying his motion, and this court will not reweigh evidence or assess witness credibility in assessing his claim. See *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

6

Wallace's sole argument on appeal is that his pleas were not fairly and understandingly made. Wallace does not allege that he received incompetent counsel during his plea process and hearing, or that he was coerced, mistreated, or misled during his plea hearing—thus Wallace has waived any challenge to the district court's findings regarding those issues. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (issues not briefed are deemed waived or abandoned). Wallace has made no claims that he received ineffective assistance of counsel because his attorney failed to inform him that his felony nolo contendere plea could lead to the loss of his right to possess a firearm or vote. He also concedes that Kansas caselaw does not require district courts to inform criminal defendants of the consequences of their pleas that are considered collateral, but he argues that those cases do not apply to "exercising his second amendment right."

In Kansas, district courts have a statutory duty to inform defendants who plead guilty to a felony of the *direct consequences* of their plea—including the possible maximum sentence. Specifically, the court must inform "the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." K.S.A. 2021 Supp. 22-3210(a)(2). These statutory rights stem from constitutional due process requirements that a guilty plea be made voluntarily and intelligently. See, e.g., *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (requiring the trial record to demonstrate the defendant's knowing, voluntary waiver of rights when entering a guilty plea); *State v. Moody*, 282 Kan. 181, 194, 144 P.3d 612 (2006) (K.S.A. 22-3210 "embodies due process requirements as interpreted by the United States Supreme Court . . . ."). A guilty plea is "more than a confession" or admission of certain acts, but "is itself a conviction" and before admitting a confession the court must reliably determine it was voluntarily made in satisfaction of the defendant's constitutional rights. *Boykin*, 395 U.S. at 242. But these constitutional due process and statutory requirements are not boundless.

7

District courts have no duty to inform criminal defendants of the collateral—not direct—consequences of a felony guilty plea. See, e.g., *Moody*, 282 Kan. at 194; *State v. Sedillos*, 279 Kan. 777, 787, 112 P.3d 854 (2005). Direct consequences are definite, immediate, and typically automatic, whereas collateral consequences do not directly result from the specific criminal offense or sentence, but result from an external source. See *Moody*, 282 Kan. at 195-96; *State v. Johnson*, No. 113,561, 2017 WL 3575649, at *4 (Kan. App. 2017) (unpublished opinion) (finding revocation of driving privileges under habitual violator statute is a collateral consequence).

Potential government restrictions resulting from external sources that restrict a defendant's future rights are not "definite and immediate" results of entering a plea to a felony charge. See, e.g., *State v. Schaefer*, 305 Kan. 581, 592, 385 P.3d 918 (2016) (the mere possibility of involuntary civil commitment resulting from a felony plea constituted a collateral consequence that did not have to be disclosed to the defendant prior to accepting a plea); *State v. LaMunyon*, 259 Kan. 54, 62, 911 P.2d 151 (1996) (the possibility that the defendant's guilty plea could be used to enhance sentencing for later crimes is a collateral consequence); *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 248, 822 P.2d 72 (1991) (possible suspension of driving privileges was a collateral consequence). Similarly, in discussing the constitutional due process requirements that a plea must be voluntarily, intelligently, and knowingly made, the Tenth Circuit noted that restrictions on firearm ownership and difficulty in obtaining employment, credit, or financial aid are all collateral consequences of entering a plea. *United States v. Muhammad*, 747 F.3d 1234 (10th Cir. 2014).

Although the Kansas Supreme Court has not yet determined the specific issues raised by Wallace, the natural extension of its prior decisions demonstrates that both the right to vote and the right to own or possess firearms constitute collateral—not direct—consequences of pleading nolo contendere to a felony conviction. A panel of this court has found that the "loss of voting rights, jury eligibility, or right to hold office" were all

8

collateral consequences that the district court was not required to disclose to a defendant before accepting their guilty plea. *Cox v. State*, 16 Kan. App. 2d 128, 130-31, 819 P.2d 1241 (1991). While Wallace's right to vote and possess a firearm could be affected by his felony plea, neither are immediate, definite, or automatic. Neither potential consequence stems directly from the charge or sentence—but result from separate government intervention. See *State v. Jackson*, No. 123,286, 2021 WL 4227700, at *2 (Kan. App. 2021) (unpublished opinion) (finding the potential federal firearm prosecution after a state firearm conviction to be a collateral consequence). Thus, the district court had no duty to inform Wallace about the potential impact his felony plea would have on his right to vote or possess firearms.

At Wallace's plea hearing, the district court informed him of the nature of the charges and of the constitutional rights he was waiving by entering his pleas. The court also reviewed with Wallace the direct consequences of his pleas and the potential sentences for each count. Wallace's responses to the court's questions reflected that he understood the nature of the proceedings and that he was aware of what he was doing. Wallace entered his pleas voluntarily after being informed of the direct consequences of his action, and he affirmatively explained that he was waiving certain trial and appeal rights. Additionally, the same judge that accepted Wallace's pleas also presided over his motion to withdraw those pleas—so the court was in a good position to evaluate whether Wallace understood the nature of the charges against him, the constitutional rights that he would give up, and the consequences. See *Schaefer*, 305 Kan. at 595 ("The district court had the opportunity to view Schaefer's affect and body language and assess whether he was truthfully and unequivocally answering those questions."); see also *State v. Perez-Sanchez*, No. 123,660, 2021 WL 5979308, at *5 (Kan. App. 2021) (unpublished opinion) (finding district court was in the best position to determine whether the defendant fairly and understandingly entered pleas because same judge presided over preliminary hearing waiver, plea hearing, and motion hearing). The district court found Wallace knowingly entered his pleas, and it had no duty to inform Wallace of the collateral consequences of

9

his pleas. Wallace has failed to meet his burden to show that the district court abused its discretion.

## CONCLUSION

The district court informed Wallace of the direct consequences of his nolo contendere pleas, and contrary to Wallace's assertions, the district court had no duty to inform him of collateral consequences of his felony plea including his potential loss of his right to possess firearms and vote. Wallace failed to show the district court abused its discretion when it denied his motion to withdraw his pleas.

Affirmed.