NOT DESIGNATED FOR PUBLICATION

No. 126,493

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PETER WRIGHT HOX KERNS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; KEITH SCHROEDER, judge. Submitted without oral argument. Opinion filed November 15, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas R. Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

PER CURIAM: Peter Wright Hox Kerns Jr. appeals the district court's denial of his presentencing motion to withdraw his guilty plea to felony stalking. Kerns contends that when the district court denied his motion, the district court violated the law controlling whether good cause exists to grant his motion as well as ignored facts supporting his motion. Nevertheless, because Kerns' arguments are fatally flawed, we affirm the district court's denial of Kerns' motion.

1

Kerns' ex-wife had a protection from stalking (PFS) order against him. The district court issued the PFS order on October 13, 2020. Kerns was personally served with the PFS order that same day.

About a year later, in early October 2021, the State charged Kerns with committing three crimes against his ex-wife between early August and early October 2021. Specifically, it charged him with stalking his ex-wife—a severity level 9 person felony contrary to K.S.A. 21-5427(a)(3)(A). It charged him with harassing his ex-wife with a telecommunication device—a Class A nonperson misdemeanor contrary to K.S.A. 21-6206(a)(1)(C). And it charged him with violating the PFS order itself—a class A person misdemeanor contrary to K.S.A. 21-5924(a)(6).

The day before Kerns' scheduled jury trial on the preceding charges, the district court held a hearing. At this hearing, instead of discussing Kerns' upcoming jury trial, Kerns' counsel (Counsel) explained that Kerns had just entered a plea agreement with the State. Under the plea agreement, Kerns agreed to plead guilty to felony stalking in exchange for the State's dismissal of his misdemeanor charges as well as the State's promise to recommend that the district court sentence Kerns to his mid-range presumptive sentence, which was probation. In addition, it seems that by pleading guilty, the State promised not to charge Kerns for his more recent alleged violations of the PFS order. It is undisputed that immediately before Kerns' plea hearing, Counsel and the prosecutor finalized the terms of the plea agreement, including the State's promise not to file new charges for Kerns' alleged new crimes.

Once Counsel and the prosecutor explained the terms of Kerns' plea agreement, the district court asked Kerns if that was his understanding of the agreement too. Kerns responded that Counsel's and the prosecutor's explanation of the plea agreement was

correct. Although Kerns was crying, when asked by the district court if he "need[ed] to take a moment or [was he] okay," Kerns told the district court that he was "okay." Then, the district court proceeded with Kerns' plea colloquy. During the plea colloquy, Kerns told the district court the following: (1) that he understood that he was currently presumed innocent; (2) that he understood that by pleading guilty, he was giving up his right to a jury trial, at which the State would have to prove him guilty beyond a reasonable doubt; (3) that he had adequate time to discuss pleading guilty with Counsel; (4) that he was satisfied with Counsel's representation; (5) that he was not being forced, threatened, or coerced to plead guilty; (6) that he was voluntarily pleading guilty; (7) that he was not "under the influence of any type of drugs or alcohol" and was of sound mind; (8) that he was aware of the possible sentencing ranges for committing felony stalking; (9) that he was satisfied with the district court's treatment of him; and (10) that he had no direct complaints about the prosecutor's treatment of him.

When specifically asking Kerns about Counsel's representation, Kerns told the district court that Counsel had "been great." When the district court asked Kerns about the prosecutor, Kerns responded that the prosecutor "ha[d] a job to do." As for his responses to the district court's questions about coercion and voluntariness, when the district court asked Kerns whether anybody had threatened him to plead guilty to felony stalking, he responded, "It's the best deal I got." He continued by explicitly telling the district court judge that he chose to enter the plea agreement with the State so he could have visitations with the children he shared with his ex-wife: "This makes it to where I can see my children, yes, sir. It's a choice I'm making."

Following this plea colloquy, the State successfully moved to dismiss its misdemeanor charges against Kerns and told the district court the factual basis for its felony stalking charge. In the end, the district court accepted Kerns' guilty plea to felony stalking as alleged by the State in its factual basis.

3

But before his sentencing, and with the help of new counsel, Kerns moved to withdraw his guilty plea. In his motion, Kerns alleged that he had good cause to withdraw his guilty plea to felony stalking as meant under K.S.A. 22-3210(d)(1) because he "felt" that he had been "misled, coerced, mistreated, or unfairly taken advantage of and that the plea was not fairly and understandingly made." Kerns asserted that Counsel should have told him about the effect that having a felony conviction "would have on [his] employability and on his life in general."

Eventually, the district court held an evidentiary hearing on Kerns' presentencing motion to withdraw his felony stalking guilty plea. At this hearing, Kerns testified on his own behalf. Meanwhile, Counsel testified on the State's behalf.

Kerns testified that he believed he did not understandingly enter his guilty plea for several reasons. He testified that he was too emotional to understand what was happening. He alleged that the district court judge at his plea hearing, who was the same judge presiding over his motion hearing, knew that he "wasn't okay," which was why the judge asked if he needed a moment when he was crying. Although he recognized that his responses during his plea colloquy supported that he understandingly entered his guilty plea, he said that his responses were "not how [he] felt." He alleged that he was innocent multiple times. He alleged that he had exculpatory evidence. He also alleged that he was unhappy with Counsel's performance. When asked by the prosecutor why he responded that he was happy with Counsel's representation at his plea hearing, Kerns testified "[t]hat was how [he] was brushing it under the table" because he "was trying to get this over with." Kerns explained that he believed that there were things that Counsel could have done "to make [him] feel more confident in [his] ability to defend [himself] rather than [him] hav[ing] to turn around and say enough is enough."

Regarding the long-term consequences from having a felony conviction, Kerns testified that he would have proceeded with his jury trial if he understood that his

4

conviction would have employment consequences. He testified that he was currently a personal care assistant but wanted to become a certified nursing assistant (CNA), which required a license. He also testified about taking care of his brother with special needs. During his testimony, though, Kerns never explained when he decided he wanted to become a CNA. Rather, he testified that he had "recently been looking into getting [his] CNA [*sic*] and making that more [his] profession."

Concerning coercion, Kerns testified that he felt coerced by the prosecutor to enter the plea agreement. He explained that before the hearing started, he heard the prosecutor say the following to his ex-wife: "'We're playing hardball. We're going after you.'" According to Kerns, this "made [him] feel intimidated" and made him "feel like [he] didn't have any options." Yet later, Kerns testified that pleading guilty was "exactly what [he] wanted to do" because he believed that it would "[g]et this over with." He asserted that "[n]obody forces [him] to do anything [he does not] want to do."

In her testimony, Counsel explained that when she arrived at what turned into Kerns' plea hearing, she intended to ask for a continuance of Kerns' jury trial because Kerns kept telling her he had exculpatory evidence. She hoped this continuance would give Kerns more time to give her the exculpatory evidence. Counsel explained that at the start of the hearing, however, the prosecutor told her that if Kerns had a jury trial, the State would likely file "additional charges." So, Counsel explained that she had to discuss "the main pros and cons" of the plea agreement with Kerns immediately before the hearing. Also, when asked about whether the prosecutor coerced Kerns, Counsel testified that Kerns *felt* like he was being coerced because the prosecutor was threatening to file more charges against him.

As for the contents and nature of the exculpatory evidence, Counsel testified that "for some of the counts [she thought] there was some good stuff that was coming, but [she could not] say for sure." Counsel could not say for sure because she never received

the alleged exculpatory evidence. She explained that she was not "a hundred percent sure" what the exculpatory evidence even was.

When asked about Kerns' emotions, Counsel testified that she believed Kerns' "emotions [were] easily accessible." Although she testified that Kerns was not "overly out there," she explained that Kerns was "not someone who's shut off and hard to tell . . . what he's thinking." She remembered Kerns crying, not sobbing, at his plea hearing. Regardless of those emotions, Counsel testified that Kerns "underst[oo]d what was going on." She testified that Kerns never said or did anything that made her concerned about his understanding of the plea agreement or entering a guilty plea. She also testified that it was important to her that her clients understood what was happening when entering plea agreements.

Then, when asked about Kerns' testimony that she failed to tell him about employment consequences stemming from his felony stalking conviction, Counsel testified that it was not her responsibility to advise Kerns about his future employability:

> "Just something that concerns me based on being in the room while Mr. Kerns testified is I don't think I could have said, well, any licenses you want to get in the future this is going to mess up. I'm not a fortune teller. I just know . . . you have to check the box that you're a felon if you get a felony. You know, I knew he was a caretaker for his brother and did some home health stuff, but as to possibly going to school or something in the future, that's not necessarily something I would automatically get into."

Counsel explained that her notes said that Kerns was unemployed and had been unemployed for about a year.

Following the parties' closing arguments, the district court made its ruling from the bench. In doing so, it explained that it had reviewed the transcript from Kerns' plea hearing. It also explained that it was relying on our Supreme Court's factors outlined in

6

*State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), to determine whether Kerns had established good cause to withdraw his guilty plea under K.S.A. 22-3210(d)(1).

Then, it found that every response that Kerns provided during the plea colloquy supported that he understandingly and voluntarily entered his felony stalking guilty plea. It pointed out that Kerns explicitly stated that he was entering his guilty plea so he could still see his children. It stressed that when it asked about Counsel's representation, Kerns told it that "'[Counsel's] been great.'" It recognized that Kerns was emotional. Yet, it pointed out that when it asked Kerns if he was okay, Kerns responded that he was okay. It determined that the prosecutor was legally authorized to discuss new, additional charges as part of plea negotiations. Regarding Kerns' assertion that Counsel or the district court should have discussed how having a felony conviction may affect his future employability, the district court rejected this assertion because it was "not the court's duty to apprise a defendant of every possible ramification that a felony conviction will have."

In making its ruling, the district court discussed how Kerns had many opportunities, including at his preliminary hearing, to present evidence. It explained that it was "hard pressed . . . to find that [Kerns] didn't understand what was going on, [or] that [he was not] fairly apprised of what was going on." When discussing whether Kerns was coerced, the district court rejected Kerns' assertion partly based on his testimony that nobody forces him to do anything that he does not want to do. Also, when discussing Counsel's representation in general, the district court described Counsel as "competent." Because Counsel was "competent," the district court rejected Kerns' argument that Counsel's representation was good cause for him to withdraw his guilty plea.

Afterwards, the district court sentenced Kerns to 12 months' probation with an underlying 7-month prison term followed by 12 months' postrelease supervision. Kerns now timely appeals his felony stalking conviction.

ANALYSIS

When considering a defendant's appeal of the district court's denial of his or her presentencing motion to withdraw plea, we review the district court's decision for an abuse of discretion. *Edgar*, 281 Kan. at 38. A district court abuses its discretion if it makes an error of law, an error of fact, or some other unreasonable decision. See 281 Kan. at 38. "Applying an abuse of discretion standard does not involve reweighing evidence or assessing witness credibility." *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017). Instead, under the abuse of discretion standard of review, we defer to the district court's fact-findings. 306 Kan. at 472.

Under K.S.A. 22-3210(a)(2), the district court cannot accept a defendant's guilty plea or no contest plea unless the defendant has been informed of "the consequences of the plea, including the specific sentencing guidelines level . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." Relatedly, under K.S.A. 22-3210(a)(3), the district court cannot accept a defendant's guilty or no contest plea to a felony until "the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

To withdraw his or her guilty or no contest plea before sentencing, a defendant must establish good cause to do so. Under K.S.A. 22-3210(d)(1), "[a] plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." In *Edgar*, our Supreme Court determined that Kansas courts reviewing the denial of a presentencing motion to withdraw a plea under K.S.A. 22-3210(d)(1) should consider three factors:  (1) whether the defendant was represented by competent counsel, (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made. 281 Kan. at 36. Later, in *State v. Aguilar*, 290 Kan. 506,

512-13, 231 P.3d 563 (2010), our Supreme Court clarified that the three *Edgar* factors were nonexclusive factors. In *Aguilar*, our Supreme Court also explained that "lackluster advocacy" may prove the statutorily deficient representation required under K.S.A. 22-3210(d)(1)'s good cause standard. 290 Kan. at 513.

Here, Kerns argues that the district court erred when considering the first *Edgar* factor about whether Counsel was competent as well as the third *Edgar* factor about whether he fairly and understandingly entered his guilty plea. Additionally, Kerns argues that the district court's denial of his motion was unreasonable for the following reasons: (1) because the prosecutor intimidated him; (2) because Counsel provided lackluster advocacy; and (3) because he was "reduced to tears" when pleading guilty. The State largely responds that the evidence from Kerns' hearing on his presentencing motion to withdraw his plea proves that there was no good cause to grant the motion. Hence, it asserts that we should affirm the district court's denial of Kerns' motion.

Turning our focus to Kerns' argument about the first *Edgar* factor, we note that Kerns' argument concerns whether the district court considered the evidence presented at Kerns' motion hearing under the wrong legal standard. Kerns contends that the district court never considered whether Counsel provided lackluster advocacy. Rather, Kerns contends that the court considered "whether counsel, generally speaking, was competent." Kerns suggests that the district court considered whether Counsel's performance violated his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. The constitutional ineffective assistance of counsel test requires a defendant to establish two things: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there was a reasonable probability that the proceeding's result would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Relying on his assertion that the district court wrongly applied the constitutional

ineffective assistance of counsel test, Kerns further argues that "the evidence supporting a finding of lackluster advocacy was compelling."

To support this argument, Kerns points to certain testimony from Counsel at his motion hearing. For instance, he points to Counsel's testimony indicating that she probably did not discuss potential employment consequences from pleading guilty to a person felony. He points to Counsel's testimony that she knew he was involved in "'some home health stuff.'" He points to Counsel's testimony about the exculpatory evidence that he intended to provide her. He also points to Counsel's testimony that she thought "'there was some good stuff that was coming, but [that she could not] say for sure.'" Kerns asserts that "[f]ailing to follow up on the existence of exculpatory evidence" and failing to advise him of the "collateral consequences that [he] was likely to suffer" constituted lackluster advocacy. As a result, Kerns concludes that "had the district court been reviewing for lackluster advocacy rather than simply determining that defense counsel was competent, its legal analysis likely would have come out differently."

But Kerns' arguments about the district court ignoring the preceding testimony are unpersuasive. To begin with, we stress that the district court never indicated that it was considering whether Counsel's performance fell below an objective standard of reasonableness as required to prove any constitutional claim of ineffective assistance of counsel. See *Strickland*, 466 U.S. at 688. Instead, the district court simply used the term "competent" rather than the term "lackluster advocacy" when evaluating whether Counsel competently represented Kerns as meant under the first *Edgar* factor.

Yet, even if we assumed for argument's sake that the district court used the wrong legal test when considering Counsel's competency as meant under the first *Edgar* factor, we affirm the district court's findings about Counsel's adequate representation. When arguing that Counsel's testimony showed that there was good cause to withdraw his guilty plea, Kerns has cherry-picked Counsel's motion hearing testimony while ignoring his

10

own adverse testimony. Although Counsel testified that she probably did not discuss potential employment consequences with Kerns, she also testified that she did not believe it was her responsibility to discuss those employment consequences with him.

Kerns' argument conveniently ignores his testimony that he was not a CNA when he pleaded guilty to stalking. He testified that he had only "recently been looking into getting [his] CNA [*sic*] and making that more [his] profession," which required him to get a license. So, as Counsel testified and the district court stressed in its ruling, neither Counsel nor the district court erred by not discussing how a felony conviction may impact Kerns' employability as a CNA. Neither an attorney nor a district court can advise a defendant about potential employment consequences when (1) that defendant does not presently have a job and (2) that defendant does not tell anyone about his or her desire to become a licensed professional.

Regarding Kerns' arguments about Counsel ignoring exculpatory evidence, once again, Kerns' arguments depend on ignoring Counsel's as well as his own unfavorable testimony. At the motion hearing, Counsel testified that although Kerns told her that he had exculpatory evidence, Kerns never gave her this evidence. On the other hand, Kerns testified that he "felt like [he] had evidence" and that Counsel could have "done a better job of investigating."

As it concerns the exculpatory evidence, though, how could Counsel have done a better job with evidence she was never provided? Other than suggesting that the exculpatory evidence would "damage" his ex-wife, Kerns has never discussed the nature or the contents of the alleged exculpatory evidence. That is to say, Kerns did not discuss the nature or contents of the exculpatory evidence before the district court. Likewise, he does not discuss the nature or contents of the exculpatory evidence on appeal. In addition, because Kerns never discusses the nature of the exculpatory evidence, his arguments are conclusory. He merely argues that an error exists without providing any evidence

11

establishing such error. See *State v. Fritz*, 299 Kan. 153, 156, 321 P.3d 763 (2014) (holding that "[m]ere conclusions of the defendant are insufficient to raise a substantial issue of fact when no factual basis is alleged or appears in the record" when the defendant seeks to withdraw plea).

It is a well-known rule that we deem any issue inadequately briefed by the appellant waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). Here, by never discussing the exculpatory evidence at issue, Kerns has done two things: (1) He failed to prove good cause to withdraw his guilty plea under the first *Edgar* factor before the district court; and (2) he waived his argument about Counsel's lackluster advocacy on appeal. Simply put, because Kerns never describes the alleged exculpatory evidence that he never gave to Counsel, we cannot consider his conclusory argument.

In summary, even if the district court wrongly used the constitutional ineffective assistance of counsel test when considering Kerns' presentencing motion to withdraw his guilty plea, Kerns' arguments twists Counsel's testimony while ignoring his own detrimental testimony. Put another way, Kerns' complaints about the district court's finding that there was no good cause to grant his motion under the first *Edgar* factor hinge on asking us to reweigh the facts contrary to our standard of review. See *Reu-El*, 306 Kan. at 472. His argument about exculpatory evidence is also conclusory. Thus, we affirm the district court's rulings and findings supporting that Counsel provided competent representation when denying Kerns' presentencing motion to withdraw his guilty plea.

Next, Kerns' argument about the district court's consideration of the third *Edgar* factor mirrors his argument about not being told about a felony conviction's effect on his employability. He argues that before he pleaded guilty to felony stalking, K.S.A. 22-3210(a)(3) required Counsel and the district court to tell him about potential employment

12

consequences. Kerns asserts that when the district court denied his presentencing motion to withdraw his stalking guilty plea, the district court wrongly focused "on the quality of its colloquy." He asserts that rather than focusing on the quality of the plea colloquy, the district court should have been considering whether he understood the collateral employment consequences from pleading guilty to a felony. According to Kerns, without knowing the collateral employment consequences before entering his felony guilty plea, he could not have understandingly pleaded guilty as meant under the third *Edgar* factor.

In making this argument, Kerns concedes that our Supreme Court has held that the district court need not warn a defendant of all collateral consequences from entering a guilty or no contest plea. When analyzing K.S.A. 22-3210(a)(2)—the subsection that specifically addresses informing a defendant about the consequences of his or her plea—our Supreme Court has held that a defendant need be informed only of the direct consequences from entering a guilty or no contest plea. See *State v. Moody*, 282 Kan. 181, 194, 144 P.3d 612 (2006). A direct consequence is something that is definite, immediate, and essentially an automatic result of the defendant's conviction. 282 Kan. at 194.

Because Kerns was not a CNA when he pleaded guilty and seemingly had no plans of becoming a CNA as of his plea hearing, it is readily apparent that whatever effect that pleading guilty to stalking had on Kerns' ability to later become a CNA was a collateral consequence of his conviction. So, under our Supreme Court precedent, the district court had no duty to advise Kerns about collateral consequences of his felony conviction related to his employment. For this same reason, Counsel had no duty to advise Kerns about the collateral consequences of his felony conviction related to his future, potential employment. See *United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) (confining the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 [2010], to deportation cases and holding that a lawyer does not have a duty to explain the consequences of hypothetical future

convictions); *Hutchison v. United States*, 450 F.2d 930, 931 (10th Cir. 1971) (holding that the defense attorney's failure to advise on an administrative punishment, in addition to the criminal punishment, did not constitute ineffective assistance because it was not a "definite practical consequence of the plea").

Still, Kerns argues that the district court should have allowed him to withdraw his guilty plea under K.S.A. 22-3210(d)(1)'s good cause standard. He argues that under the good cause standard, the district court should have recognized that he had not understandingly pleaded guilty to felony stalking because he knew nothing about the possible employment consequences.

Nevertheless, we are duty-bound to follow our Supreme Court precedent absent some indication that our Supreme Court is moving away from its precedent. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Here, there is no indication that our Supreme Court is moving away from its precedent that the district court has no duty to tell a defendant about collateral consequences of his or her pleas. See *State v. Wallace*, 62 Kan. App. 2d 420, 425, 516 P.3d 140 (2022) (relying on *Moody*'s precedent that the district court has no duty to tell a defendant about collateral consequences of pleading guilty). Additionally, in his brief, Kerns includes no argument that our Supreme Court is moving away from its precedent. *Moody*, 282 Kan. at 194-95; see also *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (holding that failure to show why an argument is sound in the face of contrary authority is akin to inadequately briefing the argument). Indeed, as with his argument concerning his alleged exculpatory evidence, Kerns' argument is conclusory. He merely asserts that the district court and Counsel should have told him about unknown, future employment consequences without providing us any guidance on how either the district court or Counsel could have possibly known how to tell him about unknown, future employment consequences. As a result, without ever asserting that our Supreme Court is moving away from the preceding precedent, Kerns asks us to violate its precedent. In turn, we reject Kerns' contention that

the district court erred by finding that he failed to prove good cause to withdraw his guilty plea under the third *Edgar* factor because it had no duty to advise him of the effect that pleading guilty to felony stalking may have on his future employability.

Finally, Kerns' remaining arguments involve the reasonableness of the district court's decision. Essentially, Kerns argues that his emotions when he entered his guilty plea were so overwhelming that his emotional state constitutes good cause to withdraw his guilty plea under K.S.A. 22-3210(d). He stresses that it is undisputed that when he entered his guilty plea, he was crying. He stresses that during his plea colloquy, he told the district court that he was choosing to plead guilty because it "'[made] it to where [he could] see [his] children.'" He also points to his plea hearing testimony that he was intimidated by the prosecutor's comment about "'playing hardball'" before he entered his guilty plea. He contends that given these facts, the district court's denial of his presentencing motion to withdraw his guilty plea was unreasonable.

Yet, all of Kerns' arguments involve reweighing the evidence in his favor. He wants us to find that his motion hearing testimony about his overwhelming emotional state was credible contrary to the district court's fact-finding otherwise. As discussed already, this violates our standard of review. Thus, all of Kerns' arguments about the reasonableness of the district court's denial of his presentencing motion to withdraw his guilty plea fail. See *Reu-El*, 306 Kan. at 472.

Still, we note that the same district court judge presided over Kerns' plea hearing and motion hearing. So, the district court judge was undoubtedly in the best position to determine whether Kerns understandingly and voluntarily entered his guilty plea despite his emotional state. Next, we note that our review of the plea colloquy supports the district court's finding that Kerns understandingly and voluntarily entered his guilty plea although he was emotional when entering his plea. Lastly, we note that the prosecutor could charge Kerns with new crimes if he committed new crimes. Thus, although the

prosecutor's discussion with Kerns' attorney about the State filing new charges against Kerns may have intimidated Kerns, it was a legal as well as a common tactic used by prosecutors in plea negotiations between the State and a defendant who has committed multiple crimes.

To conclude, Kerns has not established that the district court erred by denying his presentencing motion to withdraw his guilty plea to stalking. Even assuming that the district court wrongly considered Counsel's competency under the constitutional ineffective assistance of counsel test instead of the lackluster advocacy standard as required under the first *Edgar* factor, Kerns' underlying arguments about Counsel's lackluster advocacy are unpersuasive. They are conclusory or hinge on reweighing the evidence in his favor in violation of this court's standard of review. *Reu-El*, 306 Kan. at 472. Likewise, Kerns' arguments why the district court's decision was unreasonable hinge on reweighing the evidence in his favor. As for Kerns' argument that the district court wrongly found that he had not proven good cause to withdraw his guilty plea under the third *Edgar* factor, Kerns' argument asks us to disregard our Supreme Court precedent that a district court judge, and thus a defendant's counsel, has no duty to tell a defendant about collateral consequences of his or her guilty plea. *Moody*, 282 Kan. at 194-95. We are duty-bound to follow our Supreme Court precedent absent some indication that our Supreme Court is moving away from its previous precedent. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). On this record, Kerns never argues why we should depart from our Supreme Court's holding in *Moody*. Thus, measured by the standard established in *Moody*, it affords Kerns no sound basis for him to argue that the district court erred when it found that he had not proven good cause to withdraw his guilty plea under the third *Edgar* factor.

Affirmed.